SKELLY OIL COMPANY, a corporation, an Own Risk Carrier, Petitioner,

v.

STATE INDUSTRIAL COMMISSION and Earl H. Sumner, Respondents.

No. 37234.

Supreme Court of Oklahoma.

July 17, 1956.

Rehearing Denied Sept. 11, 1956.

Hawley C. Kerr, Gayle M. Pickens, Louis B. Gresham, Leon C. Gavras, Tulsa, for petitioner.

Harve N. Langley, Pryor, Mac Q. Williamson, Atty. Gen., for respondents.

HUNT, Justice.

On the 17th day of March, 1954, Earl H. Sumner, respondent herein, filed his claim for compensation against Skelly Oil Company, referred to as petitioner herein, in which he states that on December 14, 1953, while in the employ of Skelly Oil Company he sustained an accidental injury consisting of an injury to his back. The injury occurred while he was engaged in lifting a heavy kitchen range; that as a result of such injury he sustained some permanent disability to his person.

The trial commissioner found that on December 14, 1953, respondent, while in the employ of petitioner, sustained an accidental injury consisting of an injury to his back; that as a result of such injury he was temporarily totally disabled from April 15, 1954 to March 31, 1955, when temporary total disability ceased, for which he is entitled to compensation for 50 weeks at $28 per week, or a total sum of $1,400, and further found that respondent as a result of such injury sustained a 25 per cent permanent partial disability to his body as a whole for which he is entitled to compensation in the sum of $3,500, and upon such findings entered an award in favor of respondent, which was sustained on appeal to the Commission en banc.

Petitioner brings the case here to review the award. Its first contention is:

"The Commission's finding and its award based thereon that claimant's disability was the result of the injury of December 14, 1953, is not sustained by the record for the reason that the medical testimony relied upon to support such finding was based upon an incomplete and materially inaccurate history that was contrary to the established fact."

Respondent in his own behalf in substance testified: On December 14, 1953 he sustained an accidental injury while in the employ of Skelly Oil Company consisting of an injury to his back; that the injury occurred in the manner stated in his claim. He was first employed by petitioner in

May, 1949. He was employed as a station service man. His work consisted of installing tanks. He piped them and installed and adjusted them; that on February 1, 1951, while in the employ of petitioner he sustained an accidental injury consisting of an injury to his back. He strained his back while assisting another employee in loading a heavy tank on a trailer. While he was engaged in lifting the tank on the trailer he felt a severe pain in his back and down his leg. The next day he informed petitioner's foreman of said injury and that the foreman sent him to a doctor for treatment. The doctor treated him for twelve days. He was improved some by the treatments. He was not, however, able to return to work for about 30 days thereafter. He returned to work on March 19, 1951, and continued to work until December 14, 1953. He further testified he did not think that he had completely recovered from his 1951 injury but he recovered sufficiently to do ordinary work. He, however, on occasion felt some pain in his back but the pain was not so frequent and severe as to prevent him doing the work he was assigned to do. He continued to work from March 18, 1951, to December 14, 1953, when he sustained his present injury. Respondent, as to this injury, testified that he injured his back while engaged in loading a heavy kitchen range on a pickup truck. The range weighed about three hundred pounds. He was assisted by another employee in loading the range. Each lifted one end of the range. Respondent, at the time he sustained his injury was lifting a weight of about one hundred and fifty pounds. He then drove the truck to the place of unloading but was unable to assist in unloading because of the injury and pain in his back. The next day after he sustained said injury he notified his foreman of the injury and was directed by the foreman to go to Dr. O for treatment. The doctor treated him for several days. The treatment consisted of heat treatment and some medicine was given him to ease the pain, and the doctor directed him to wear a brace on his back. He then returned to work

but was given lighter work. His condition, however, grew worse. He suffered more pain in his back, and also suffered pain in his leg. He, however, kept on working until March, 1954. Since that time he has been unable to do any work. He thereafter requested his employer to furnish him further medical treatment which was refused on the ground that his condition was not caused by injury but was due solely to a congenital deformity of his back.

Respondent thereafter, of his own volition, was examined and treated by various doctors, among whom was Dr. S, who operated to relieve the pain in his back. He improved some as a result of the operation, but he is still unable to do any work. Dr. S testified that he first saw and examined respondent on the 15th day of July, 1954; that respondent was directed to him by Dr. G of Tulsa when he was a patient in a hospital at Tulsa following a milogram which had shown a defect in the thoracic region of the spine. The patient was referred to him for surgical removal of what was felt to be a disc or a cyst in the thoracic spine. He obtained a history of respondent that he been working for an oil company in February or March of 1951 and had lifted a heavy tank, and at that time he had felt a severe pain in his back but that the pain did not radiate down his leg, but he kept on working from April, 1951 until December, 1953 without material difficulty. In December, 1953 he lifted a kitchen range; while loading the range, and while so doing felt a severe pain in his back, left hip and right leg. He tried thereafter to work but was unable to do so. He examined and treated respondent but he did not respond. He thereafter discussed respondent's condition with Dr. G after respondent was admitted to the hospital. The doctor further testified:

"The patient was taken to surgery, and in the lower thoracic region of the spine we exposed five spinus processes, T-10, T-11, T-12, and the upper two lumbar. These were removed, on both sides, as well as the laminae, or super structure over the posterior part of the

spinal cord and the extra dural spaces outside of the spine were explored carefully from the ninth thoracic down to the third lumbar. No evidence of disc was found and no evidence of tumor. The dura or sheath covering the spine was then opened and immediately beneath the dura or covering of the spine, say at the level of the twelfth thoracic nerve rood there was found to be a cystic tumor on the right side extending downward for a distance of four centimeters and upward for a distance of three centimeters. The wall of the cyst was opened and a large portion of the cyst wall removed. A small portion was left postero-laterally due to the fact that a large artery was present in the subarachnoid space at this level and we did not want to impair the blood supply to this portion of the spinal cord."

The doctor testified that after the operation respondent made some improvement, but has not fully recovered, and further testified that respondent would have a minimum of 25 per cent permanent partial disability to the body as a whole and assuming the history obtained to be correct, in his opinion, such disability is due to the injury sustained on December 14, 1953, rather than to the injury sustained in 1951. This is the only medical evidence offered by either party as to the cause and extent of respondent's disability.

It is the contention of petitioner that the opinion of Dr. S is based on an incorrect history; that it is based on a history that respondent suffered no pain in his leg as a result of his 1951 injury, which is incorrect, according to respondent's own testimony, and that the doctor's evidence should, therefore, be discarded as being without probative value. The doctor's evidence discloses that respondent gave a history to the effect that as a result of his 1951 injury he felt a pain in his back but the pain did not radiate down his leg, whereas respondent testified that while engaged in lifting the oil tank in 1951 he felt a severe pain in his back and in his leg.

It is argued by petitioner that if respondent had given the doctor a correct history and had given the history of pain in his leg at the time he sustained his 1951 injury the opinion of the doctor might have been different, and in making this contention refers to the following excerpt of his testimony:

"Q. Now was all the pain and discomfort as related to you by the patient traceable to the lower thoracic—

"A. Well, we have this particular mechanism involved and I think that this must be explained for the benefit of the Court: There is what we call referred pain; we know in a fascial fat hernia, present in the so-called distribution of the fifth lumbar durematoma that this lesion, well away from the spinal cord or nerve roots, will produce pain down the leg. We also know that a disc in L-4 and L-5 will produce pain in the distribution of T-12, in other words in the inguinal region where hernias are found. It is difficult to explain except on that basis the pain that this man has had in the upper portion of the leg, on the basis of spinal cord tumors we feel that the cystic tumor at this location can explain the symptomatology that he had."

Respondent, however, testified that after he sustained his 1951 injury he was treated for that injury for about twelve days. He made some improvement, but was not able to do any work until about one month thereafter. He thereafter returned to work, and while he did not think he had completely recovered from that injury he recovered sufficiently to do ordinary work; he, however, occasionally suffered pain in his back, but the pain was not so frequent or so severe as to prevent him from doing the work he was assigned to do; that after he returned to work subsequent to his 1951 injury he continued to work without material difficulty until December 14, 1953, when he sustained his present injury.

While respondent testified that after he returned to work he occasionally felt pain

in his back, he did not testify that he thereafter sustained any pain in his leg. It would appear from his testimony that he suffered no pain in his leg after returning to work subsequent to his 1951 injury until he sustained his second injury on December 14, 1953.

In view of the above state of facts we do not think it can be said that the doctor's opinion was based on a history so materially inaccurate as to justify us in discarding the doctor's testimony as being without probative value.

■ Petitioner's final contention is that the Commission's finding and award that all of the 25 per cent permanent partial disability awarded claimant resulted from the injury of December, 1953, is erroneous because it fails to take into account claimant's pre-existing disability resulting from his previous injury in February, 1951. There is no evidence tending to show that respondent sustained any permanent disability as a result of his 1951 injury, but the evidence of respondent and Dr. S tends to establish the contrary. The Commission found that respondent's disability is due entirely to the injury sustained on December 14, 1953. We cannot say that there is no competent evidence to sustain this finding. It will, therefore, not be disturbed on review.

We have examined and considered the cases cited by petitioner, including the recent case of Hall v. Howard Johnson of Oklahoma, Inc., cited in the reply brief and now reported in Okl., 297 P.2d 560. In the latter case the Commission found the disability was due entirely to the first injury and same was sustained as being reasonably supported by the evidence. Likewise, we have here found that the order of the Commission, that the disability is due entirely to the injury sustained on December 14, 1953, is reasonably supported by competent evidence.

■ We have heretofore held that the cause and extent of disability resulting from an accidental injury presents questions of fact for the determination of the State Industrial Commission and its finding on such questions, and an award based thereon will not be disturbed on review where reasonably supported by competent evidence. Howze v. State Industrial Commission, 208 Okl. 462, 257 P.2d 502; Oklahoma Steel Castings Co. v. Cates, 195 Okl. 646, 163 P.2d 1013.

Award sustained.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH, CORN, HALLEY and BLACKBIRD, JJ., concur.