**SKELLY OIL COMPANY, a Corporation, Own Risk Carrier, Petitioner,**

v.

**Earl H. SUMNER and the State Industrial Commission of the State of Oklahoma, Respondents.**

**No. 38622.**

Supreme Court of Oklahoma.

Nov. 24, 1959.

Louis B. Gresham, Ralph L. Cunnyngham, James A. Robinson, Tulsa, for petitioner.

Harve N. Langley, Pryor, E. M. Knight, Tulsa, Mac Q. Williamson, Atty. Gen., for respondents.

BLACKBIRD, Justice.

In this case it appears that on the 17th day of March, 1954, claimant, Earl H. Sumner filed a claim for compensation against his employer Skelly Oil Company (own risk) stating that on December 14, 1953, while in the employ of Skelly Oil Company, hereinafter referred to as petitioner, he sustained an accidental injury arising out of and in the course of his hazardous employment consisting of an injury to his back; that the injury occurred while he was engaged in lifting a heavy kitchen range, resulting in some permanent disability to his person.

The Commission in that case awarded him compensation for temporary total disability for 50 weeks at $28 per week or the total sum of $1,400, and also awarded him compensation for permanent partial disability in the sum of $3,500 based on a 25 per cent permanent partial disability to his body as a whole. That award was sustained by this court on appeal. Skelly Oil Co. v. State Industrial Commission, Okl., 301 P.2d 236. This award became final on September 17, 1956, the date upon which the mandate from this court was received by the State Industrial Commission and spread of record.

Thereafter, on September 30, 1957, claimant filed a motion to reopen and for additional compensation because of change in condition for the worse.

Claimant at that hearing after testifying in some detail as to the nature of the injury sustained by him on December 14, 1953, and the result of that injury, further testified that since he obtained that award he had suffered a change in his condition for the worse. He first noticed the change in his condition during the latter part of the summer of 1957, and in February and March following. It got so bad he could not walk or use his right arm. His right leg was numb and he could not feel whether his foot was on the ground or not and he had severe pain. He went to a doctor two or three times for examination and called Skelly Oil Company and asked to be placed in the hospital, which request was refused; that on July 15, 1954, he was operated by the doctor for the removal of a cyst but that the operation did not materially improve his condition. The doctor performed another operation in October, 1957, for the removal of a disc. While he improved some as a result of that operation and it took away a lot of his pain he still does not have the use of his right arm and leg like he should have and he can't hold things in his hand. He drops them. He could not do anything but for a few minutes at a time. He tried to take benefits of the State Rehabilitation Service and they offered to do something for him when he was able to take schooling, but due to the inability to use his hand and to nervousness he could not do anything.

Claimant further testified that in 1951, while working for Skelly Oil Company he sustained an injury to his back; that he made no claim for compensation for such injury; that he had sufficiently recovered from such injury to return to work and did thereafter return to work and satisfactorily continue to do the work assigned him until he sustained his injury of December 14, 1953.

Dr. S at that hearing in substance testified that in the course of his examination and treatment of claimant he noticed a change in his condition in 1957, and that he felt that such disability was over and above the 25 per cent disability previously

awarded claimant; that claimant had an additional 25 per cent to the body as a whole as a result of the lumbar disc pathology and the necessity of treatment. The doctor operated for a herniated disc and got it all as far as he could tell. The operation was in October, 1957, and subsequent to the award of 1955. The patient had a definite change in the myelographic picture. A second myelogram which was carried out showed a definite defect in the lumbar area which had not been present at the time of the first myelogram. He felt that the present lumbar problem necessitating the removal of the disc was due to his original injury. The original disability of 25 per cent was given to the thoracic spine, the upper spine; and the last operation explored lumbar 2, 3, 4 and 5, at L-4 for a transitional lumbar spine and the disc between 4 and 5 was taken out. The doctor further testified that he thought the thoracic operation helped claimant to some extent with regard to the pain he was having in the thoracic area. He did not think that it helped him with regard to the low back or leg pain. He further stated that he gave claimant 20 per cent to the thoracic and five per cent to the low back on the basis of his first estimate of 25 per cent disability. The second estimate of 25 per cent disability is related to the low back and to his arm difficulty and ulner numbness. He further testified that due to his change of condition he estimated claimant's disability at 20 per cent to the low back and 5 per cent to the ulner scalenus and claimant now has a 15 per cent increased disability to the back and five per cent to the scalenus or a total of 35 per cent disability to the body as a whole as the result of his change of condition.

The doctor on cross-examination further testified:

"Doctor, this condition you found on this last operation you say in June, 1957, if you will please explain what you found in that operation there?

"Well, I think probably Mr. Sumner—the majority of Mr. Sumner's trouble all during this period of four years up to the time of this second operation was due to disk pathology at Lumbar 5. I feel in the early states we missed the boat and made the wrong diagnosis as far as the majority of his complaints were concerned, and I feel that the disk had been present. Now at the time of the operation, the disk had come out more or protruded more than obvious. It was in 1954 when we did the first myelogram, because the myelogram in 1954 and 1957 were different, and the myelogram in 1957 showed this large dome-like protruded disk, which was causing pressure on the nerve root going out to the back and right leg.

"Then there was a change of condition as it developed there in 1957?

"The disk protruded more in 1957 than it had in 1954 or 1955.

"What do you attribute the cause of the condition, of this condition that you found in the lumbar that caused the operation?

"I think that all of his trouble resulted from the injury in 1953. * *"

The trial judge at the close of the evidence found:

"That this hearing is based upon a motion to reopen on change of condition for the worse since the 25% order of the Commission of October 25th, 1955.

"That claimant has sustained a change of condition for the worse and is now 45 per cent permanently partially disabled to the body as a whole, or 20 per cent worse than when said last order was written; 15 per cent increase to the low back and 5 per cent to the scalenus; and that claimant is entitled to additional compensation by reason of such change of condition for the worse in the amount of $2800.00,

or 100 weeks at $28.00 per week; that $56.00 has accrued and to be paid in a lump sum. That $456.00 over-payment is to be deducted from said sum of $2800.00."

Upon such findings the trial judge awarded claimant additional compensation because of change of condition for the worse in the sum above mentioned.

Petitioner brings the case here for review. Its main contention is that there is no competent evidence in the record that claimant sustained a change in his physical condition which lessened his ability to labor and perform work and that such change has occurred since the last prior award and is attributable to the injury for which compensation was originally awarded. In support of this contention counsel for petitioner in the brief state that Dr. S, the only doctor who testified at the hearing on change of condition, did not testify to any state of facts to show claimant had sustained a change of condition for the worse since the prior award was entered and that such condition is due to the injury sustained on December 14, 1953, but that the doctor in this respect testified that he did not discover claimant's disc injury at the former hearing and expressed the opinion at that time that his disability was due to his thoracic spine injury; that his evidence shows no change of condition for the worse but merely shows a change of opinion of the doctor as to the disability sustained by reason of claimant's first injury occurring on December 14, 1953, and his evidence is therefore insufficient to sustain the award awarding claimant additional compensation because of change of condition for the worse and the award for this reason should be vacated. In support of this contention petitioner relies on Southern Drilling Company v. Daley, 166 Okl. 33, 25 P.2d 1082, 1084. In that case we said:

"* * * Assuming that we have not changed our opinion by reason of an oversight, but by reason of new factors appearing in the condition which could not have been known at the earlier time, we have a real change in conditions. * * * But, where we have changed our opinion by reason of an oversight, we do not have a change in conditions. Nothing in the condition has changed; no new factor has appeared in it; we have merely changed our opinion. The condition was not in fact even in the ordinary use of the term what we said it was at the earlier time. We made a mistake. The Workmen's Compensation Law treats these two concepts in an entirely different manner. In short, it does not provide for the correction of mistakes in condition beyond the thirty-day period of its absolute jurisdiction. * * *"

Dr. S in his testimony at the hearing on change of condition admitted that at the original hearing he testified that claimant's entire disability was due to the injury to his thoracic spine. He, however, further testified that the injury to his disc had not then developed; that a myelogram was taken and the injured disc did not show on the myelogram but that thereafter and subsequent to the time the original award was entered another myelogram was taken on which myelogram the injury to claimant's disc appeared.

We think under the above evidence, it may properly be said that after the original award was entered a new factor appeared in claimant's condition which could not have been known by the doctor at the time the original award was entered but which later developed, and constitutes evidence tending to establish that claimant had sustained a change of condition for the worse since the prior award was entered.

Petitioner in opposition to the award relies upon the rule announced in Sinclair Refining Co. v. Duncan, Okl., 297 P.2d 563, 564. In that case we held:

"Where an injured employee seeks an additional award for an injury

which is compensable under the Workmen's Compensation Law he has the burden of proving that there has been a change in his physical condition which has lessened his ability to labor and perform work and that such change has occurred since the last prior award and is attributable to the original injury."

 It is the contention of petitioner that claimant's evidence is insufficient to meet the burden placed upon him under the holding in that case and similar cases cited in his brief in order to establish a change in condition for the worse. We do not agree. We think the evidence considered as a whole is sufficient to bring the case within the rule announced in the above case.

Petitioner's final contention is that assuming claimant had sustained a change in condition for the worse since the prior award was entered, that such condition was due to his injury sustained in 1951, rather than the injury sustained December 14, 1953. We do not agree. The evidence of claimant and the testimony of Dr. S clearly establishes that the disability he now has is due to the injury sustained in December, 1953, rather than to the injury sustained in 1951.

This same contention was made by petitioner at the original hearing and was denied by the State Industrial Commission and an order was entered in favor of claimant. We sustained that finding and award on appeal in the case above mentioned and held that the evidence was sufficient to sustain the finding of the Commission that the disability claimant then had was due to the injury sustained in 1953, rather than the injury sustained in 1951.

We conclude that the evidence is sufficient to sustain the finding of the Commission that claimant, since the prior award was entered, has suffered a change of condition for the worse and that such change of condition was due to the injury sustained by him December 14, 1953, and

an award based thereon awarding claimant additional compensation because of such change will therefore be sustained.

Award sustained.