**Don Earl REEVES, Petitioner,**

v.

**CENTRAL SALES PROMOTIONS, NORTHWESTERN NATIONAL INSURANCE COMPANY, Insurer, and The Workers' Compensation Court, Respondents.**

**No. 55960.**

Court of Appeals of Oklahoma, Division No. 2.

June 9, 1981.

Released for Publication by Order of Court of Appeals July 9, 1981.

Jamie Pitts, Manners, Cathcart, Lawter, Abney & Burke, Oklahoma City, for petitioner.

Vicki Robertson, Holloway, Dobson, Hudson & Bachman, Oklahoma City, for respondents.

BRIGHTMIRE, Judge.

Claimant, Don Reeves, appeals from an order of the Workers' Compensation Court sitting *en banc* vacating an order of the trial judge which found that claimant had sustained a change in his physical condition for the worse since the entry of a previous award for partial permanent disability and that such disability had increased an additional nine percent. Reeves challenges the legal validity of the *en banc* order.

I

Claimant Reeves fails to mention it, but the authority vested in both the trial judge and the court *en banc* is specified in 85 O.S.1977, Supp. § 3.6(A).[1] This statute re-

---

1. Section 3.6, entitled Appellate procedures, reads:

"A. All the evidence pertaining to each case, except upon agreed orders, shall, inso-

quires the trial judge, after hearing the evidence, to "make such order, decision or award as is proper, just and equitable in the matter." Either party may appeal to the court *en banc*, and if one does, the statute authorizes that court to "reverse or modify the decision *only* if it determines that such decision was against the clear weight of the evidence or contrary to law."[2] If the court *en banc* concludes that the trial judge's decision is either clearly against the weight of the evidence or contrary to law, it "shall issue such order, decision or award as is proper, just and equitable."

## II

The trial judge handed down his order on September 3, 1980, finding that claimant had sustained an accidental, work-related injury on February 15, 1979, and had received an award of "6 per cent permanent partial disability to the BODY for the LOW BACK injury." The judge also found that the prior order had become final and that the payments required by it had been made. Next he found that claimant had later "sustained a change in physical condition for the worse as a result of the FEBRUARY 15, 1979 injury" and he "is now 15 per cent permanently partially disabled" entitling him to additional compensation for the nine percent increase.

Respondents appealed to the court *en banc*. On October 6, 1980, that court vacated the trial judge's September 3, 1980 order and entered the following one: "[T]here has been no increase in disability of claimant as a result of the injury of FEBRUARY 15, 1979 and claimant's motion for additional compensation beyond that awarded . . . [July 5, 1979] is denied."

It is to be noted that the court *en banc* did not specifically find as a foundation fact that the trial judge's decision was against the clear weight of the evidence or that it was contrary to law, but merely determined whether, as a fact, an increase in disability had occurred. Respondents' notice of appeal to the court *en banc* helps little in trying to determine what criterion that court employed because only the following three errors were assigned, none of which refers specifically to the weight of the evidence as such: (1) the order is contrary to the evidence; (2) the order is contrary to law; and (3) the order is not supported by competent medical evidence. We shall assume, however, that the *en banc* order is premised on a conclusion that the trial judge's order is contrary to the clear weight of the evidence.

## III

The decisive question is, then, is the original order clearly against the weight of the evidence? We hold it is. Actually, as we shall see, there is really little, if any, competent evidence supporting it.

■ Matters to be considered and the essentials of proof needed with reference to a change of condition motion were discussed in *Bryant-Hayward Drilling Co. v. Cook*, Okl., 483 P.2d 1131 (1971). According to that case, the main thing claimant must present, if the injury is one that requires an expert opinion as it does here, is evidence of a medical nature that his later accident-related disability is greater, in terms of performing ordinary manual labor, than the disability he had at the prior hearing. It is

far as may be possible, be heard by the judge initially assigned to the case. Upon the completion of such hearing or hearings, the judge hearing the cause shall make such order, decision or award as is proper, just and equitable in the matter. Either party . . . shall . . . have the right to take an appeal from the order, decision or award of the judge to the Workers' Compensation Court sitting en banc. . . . The Court en banc may reverse or modify the decision only if it determines that such decision was against the clear weight of the evidence or contrary to law. Upon com-

pletion of the appeal, the members of the Court sitting en banc shall issue such order, decision or award as is proper, just and equitable."
(emphasis added)

2. The language "against the clear weight of the evidence," is probably an inadvertent grammatical corruption of the evidentiary sufficiency determinant applied in equity cases, namely, whether the decision is clearly against the weight of the evidence.

not enough to show the claimant has more pain or has a decreased physical ability to perform everyday pursuits. There must be a showing of both a physical or mental change and a resultant reduced ability to perform ordinary manual labor. *National Zinc Co. v. Thomas*, Okl., 554 P.2d 1 (1976).

Here, claimant testified that since the first award he has been "getting nervous problems and the pain is traveling, and the lower part of my back bothers me all the time.... [The] pain has increased and it's traveling ... [up my back.]" He said he has not worked since the accident because he has not been able to. This means, of course, that he was not working at the time of the first award.

Since we are dealing with a back problem, evidence from a medical expert was required and claimant offered the testimony of J. Dan Metcalf, M.D. This man said he had examined claimant three times and wrote three reports. It was the physician's opinion that prior to the first award claimant had 30 percent partial permanent disability as a result of a "herniated disc ... a compressed L5–S1 interspace" secondary to the February 15, 1979 accident. In his latest report, dated March 19, 1980, he still gives claimant 30 percent "permanent impairment" and adds: "Since this patient was previously awarded 6% permanent impairment by the court, it is my opinion that this represents a material increase in his impairment by 24%."

The speciousness of such bootstrap reasoning is obvious. His conclusion is a non sequitur that sheds no light on the relative condition differential of the patient between the time Metcalf first examined claimant and his later examination. Both times the physician found him to be 30 percent disabled. The physician did not say either in his last report or in his deposition whether he found claimant's disability increased from what it was at the time of the first award, but only that it remains greater than what the court found it to be earlier.[3]

Nor does an analysis of Metcalf's examinational findings help claimant. A comparison of the April 18, 1979, report with the one written in March 1980, fails to disclose a significant change of claimant's condition for the worse. In fact, one could argue it suggests an improvement. In April 1979, Metcalf reported that claimant complained of pain radiating to both legs. The March 1980 report does not refer to such a complaint. Both reports summarize claimant's condition as consisting of "rather severe pain in his lower back, aggravated by any type of activity, including lifting, bending ..., stooping" or "twisting." The estimational findings made during claimant's physical examinations were similar in both reports. The main changes, which in deposition the physician said were "not significantly different," involved a decrease in forward flexing of the spine from 60 to 50 degrees and in extension from 10 to five degrees. Bilateral tenderness and rigidity were said to be present in the paraspinous lumbar muscles in April 1979, whereas "severe tenderness, as well as rigidity" in the same muscles was found a year later. And in April 1979, the examiner found a "decrease" of the left heel deep tendon reflex, but noted only a "slight decrease" of the same reflex in March 1980.

### IV

The conclusion is inescapable that the trial judge's finding that claimant's condition had significantly changed for the worse was clearly against the weight of the evidence. The court *en banc*, therefore, correctly vacated the order.

Affirmed.

BACON, P. J., and BOYDSTON, J., concur.

---

**3.** Claimant's reliance upon *National Zinc Co., Inc. v. Dewitt*, Okl., 574 P.2d 300 (1978), is unavailing. As that case points out, there may conceivably be some situations where the same disability rating could be assigned by a physician in both the prior and subsequent hearing, yet the later evaluation would provide a basis for finding a change of condition and for awarding additional compensation. But such an evaluation must be more than a mere numbers game. There must be competent, objective medical evidence that a change for the worse has occurred.