**SPECIAL INDEMNITY FUND,**
Petitioner,

v.

**John B. STOCKTON and the Workers'
Compensation Court, Respondents.**

No. 56509.

Supreme Court of Oklahoma.

Oct. 12, 1982.

Steven Vincent, Fred Nicholas, Jr., Oklahoma City, for petitioner.

John B. Ballard II, Oklahoma City, for respondents.

BARNES, Vice Chief Justice:

We granted certiorari in this case to examine two questions of first impression, both requiring interpretation of the Workers' Compensation Act of 1977. The specific issues addressed are:

1. Can a claimant who has worked continuously since the occurrence of a work related injury and who is still employed at the time of the compensation hearing be classified as 100% totally and permanently disabled within the meaning of 85 O.S.1981 § 3(12)?

2. When a medical report in a worker's compensation case consists only of the history of the claimant's injuries and a conclusion as to the percentage of the disability, is it supported by "competent probative evidence" under 85 O.S.1981 § 17 that is sufficient to sustain an award of 100% permanent total disability?

John Burton Stockton, claimant, is a 59 year old male with a third grade education who has worked in the oil field his entire life. Mr. Stockton has sustained injuries as far back as 1942 to his hands, left leg, and low back, and has undergone several surgeries since 1942. In 1974 he combined his injuries against the Special Indemnity Fund and received $7,000.00. The latest injury occurred in August, 1979, when both low back and left leg injuries were sustained. Mr. Stockton received compensation for the 1979 injuries and continued his employment with Astro Well Service as a driller running a brake. He testified at the hearing of September 23, 1980, that the drilling work required him to bend over and raise up and to be on his feet all day using both hands. He further testified that he "couldn't make it", stating he had cramps in his legs and elbows and that his back would "bother him all the time" and that he subsequently discontinued employment with Astro. He took a position as a driver and stated he was supposed to work seven days a week but was only able to work two-thirds of the time. His work included a 300-mile round trip auto drive between Oklahoma City and

Anadarko and he stated that he had never been able to complete the entire trip in a day because he must frequently stop the car and get out so that his legs would quit cramping and his back would quit hurting. He testified that his wife was totally disabled; that he was the sole support of her; that he worked "when I can" and planned to discontinue work because he "just couldn't make it."

The medical evidence in the case consisted of two letters from the examining physicians. "Dr. M", witness for the Fund, recounted the history of Mr. Stockton's previous injuries, stating that the prior injuries, when combined with the accident of October 18, 1976, resulted in a 75% permanent partial disability to the body as a whole for the performance of ordinary manual labor, representing a 10% material increase. He further stated that claimant "injured his back" in August, 1979, and was awarded a 10% permanent impairment of the whole man and, due to the injury to the left leg, now had a 20% impairment of the left leg. "Dr. M" concluded that the combination of prior injuries and the most recent one made claimant a permanently and totally disabled person for the performance of ordinary manual labor. In a supplemental report "Dr. M" stated that the claimant is a "95% impaired man, from all causes." Counsel for the Fund later explained that "Dr. M's" earlier evaluation of the claimant as permanently totally disabled was based on the standard of the ability to perform ordinary manual labor, and that the later evaluation of 95% impairment was based on the definition currently provided in 85 O.S.1981 § 3(12).

"Dr. A", claimant's expert witness, also related the history of injuries sustained by Mr. Stockton and stated that it was his opinion that the prior injuries combined to an 85% permanent and partial impairment to the whole person. He stated that the material increase resulting from the August, 1979 injury was equal to 15% permanent partial impairment to the whole person, and by reason of combination, Mr. Stockton has sustained 100% permanent partial disability to the whole person. "Dr. A" later amended his letter to read that Mr. Stockton was "100% permanently and totally disabled," apologizing for his misstatement.

Neither physician made any statement of compliance with the *Guides for Evaluation of Permanent Impairment,* published by the American Medical Association in 1977 and adopted by the Workers' Compensation Court Rules under 85 O.S.1981 Ch. 4 App., R. 23. Nor did either physician discuss the examination and testing procedures by which their conclusions were reached, as required by Rule 20, *supra.* Finally, neither physician acknowledged the fact that Mr. Stockton was currently employed nor made any reference to his ability to continue his employment.

The Workers' Compensation Court found Mr. Stockton to be 100% totally and permanently disabled and adjusted his compensation rate accordingly. The Court of Appeals, Division 1, affirmed the award, finding that the lower decision was reasonably supported.

I. THE FACT THAT A CLAIMANT HAS BEEN CONTINUOUSLY EMPLOYED SINCE THE TIME OF AN INJURY FOR WHICH COMPENSATION IS SOUGHT UNDER THE WORKERS' COMPENSATION ACT OF 1977 CREATES A REBUTTABLE PRESUMPTION THAT THE CLAIMANT IS NOT PERMANENTLY AND TOTALLY DISABLED WITHIN THE MEANING OF 85 O.S.1981 § 3(12).

In 1977 the Oklahoma Workers' Compensation Law underwent sweeping reforms. Among other new provisions, the legislature provided a clear definition of total permanent disability:

"Permanent total disability" means incapacity because of accidental injury or occupational disease to earn any wages in any employment for which the employee is or becomes physically suited and reasonably fit by education, training or experience; loss of both hands, or both feet,

or both legs, or both eyes, or any two thereof, shall constitute permanent total disability." 85 O.S.1981 § 3(12).

This definition abandons the standard of ordinary manual labor or mechanical labor which had been previously utilized by the Oklahoma courts, and focuses only on the purely economic aspects of whether the employee has been removed completely from the job market by his injury. 12 Okla. City U.L.Rev. (1978). It is consistent with our previous interpretation of the philosophy of a program for compensation of injured workers. In *Service Pipeline Company v. Cargill,* 289 P.2d 961 (Okl.1955), we said, "The purpose of the workmens' compensation law is to indemnify the injured workman for loss of earning power and disability to work and not to indemnify him for a physical ailment." *Id.* at 962.

Application of the 1977 definition of permanent total disability to the facts of this case produces a result that is inconsistent and illogical on its face. The classification of Mr. Stockton as 100% permanently totally disabled, even though he has been continuously engaged in gainful employment since the August, 1979 injury is a striking contradiction to the precise language of § 3(12) which says in pertinent part: "inability . . . to earn *any* wages in *any* employment." (emphasis added).

Prior to the 1977 revision by the legislature, the standard for total permanent disability was established judicially as the statutes provided no definition. This court employed a test of whether a person was able to perform ordinary manual labor. Even under this standard we utilized earning capacity as one of the criterion. "Ordinarily the disability cannot be classified as total under Workmens' Compensation Law where earning power is not wholly destroyed." *Dierks Lumber and Coal Company v. Lindley,* 182 Okl. 185, 77 P.2d 44 (1938). We summarized the rule and included specific exceptions in *McClure v. Special Indemnity Fund and State Industrial Court,* 475 P.2d 811 (Okl.1978). " 'Total permanent disability' within the terms of workers' compensation law is not synonymous with total incapacity or total dependence, but means lack of ability to follow continuously some substantially gainful occupation without serious discomfort or pain and without material injury to health or danger to life." *Id* at 812.

Thus, even when the standard applied was merely a question of whether an individual could perform ordinary manual labor, our courts consistently examined the retained earning capacity of the claimant. However, the range of persons eligible for classification as 100% permanently totally disabled under the old standard was significantly greater than it is under the very precise wording of the 1977 provision. Because the 1977 provision is written in terms of "any employment," those workers who are no longer capable of performing their previous duties (i.e., an oilfield driller) may be disqualified for a permanent disability rating if they are, in fact, physically suited for other employment (i.e., a driver, desk job, etc.). We have said that a court is not justified in ignoring the plain words of a statute. *Allgood v. Allgood,* 626 P.2d 1323 (Okl.1981). Consequently, evaluation for permanent total disability can now be accurately made only after consideration of the claimant's ability to earn any wages in any employment for which the worker is suited and reasonably fit.

Mr. Stockton testified that he continued working because of financial necessity although he suffered pain for his efforts. In *Dierk, supra,* this Court stated,

"Sometimes men are impelled by stark necessity or strong sense of duty and obligation to labor and to seek and carry on long after the human machine has been so broken and destroyed as to seem to make it impossible and to drive it further. The wisdom of the effort and the struggle under such conditions may be questioned but the gallantry of the action should not be penalized. . . ."

Thus, historically this court has recognized that a person may be compelled by reason of necessity to continue employment even where it may be injurious to health or a threat to life. Further, we recognize that a

per se prohibition against a classification of permanent total disability based solely on the existence of continuous post injury earnings creates a policy which appears to penalize those workers forced by necessity to continue employment.

However, we also find that a policy which allows a classification of permanent total disability where an individual has been continuously employed since the injury to be equally paradoxical. In light of the clear precise language of the statute, "incapacity . . . to earn any wages in any employment," it is untenable that a claimant who is currently gainfully employed can be classified as permanently totally disabled, where there is no competent medical evidence to support claims of severe discomfort and pain, etc. When as in this case, a claimant testifies that he is physically unsuited for his current employment because of chronic pain, such testimony must be supported by expert medical testimony. The expertise of a medical specialist is required to evaluate the probability of the occurrence of such pain and discomfort, the degree and extent of discomfort, and the frequency of pain associated with the injury. Without such testimony, it is unlikely that the court can make a qualified assessment of the credibility of the claimant's personal testimony regarding the discomfort or other handicap that make the performance of continuous employment unreasonable.

■ We therefore hold that where a worker has held continuous employment in the interim period between the occurrence of the injury and the court hearing for determination of the disability, there inheres a rebuttable presumption that the claimant has not sustained a permanent total disability. Where claimant has retained a sufficient residual capacity to work, the award of total and permanent disability is unjustified under 85 O.S.1981 § 3(12). While ordinarily the employer has the burden of establishing facts constituting a bar to compensation under the workers' compensation law, when the evidence shows the worker has been continuously employed, the burden of proof will shift to the claimant to produce competent medical evidence which will abrogate the presumption. *Wick v. Gunn,* 66 Okl. 316, 169 P. 1087 (1917). Where claimant urges the court that he has worked under necessity, but claims severe discomfort and pain, such testimony must be supported and ascertained by competent medical evidence which is the result of clinical observations.

■ In the case at bar we find that although claimant testified that he was physically unable to perform his duties without serious discomfort and pain, there was no competent medical evidence to support such a finding. While the determination of disability shall be the responsibility of the Workers' Compensation Court, any claim submitted by an employee for compensation must be supported by competent medical testimony. 85 O.S.1981 § 17.

II. AN AWARD OF PERMANENT TOTAL DISABILITY UNDER THE WORKERS' COMPENSATION LAW WHICH RELIES SOLELY ON WRITTEN STATEMENTS OF THE PHYSICIAN WHICH CONTAIN ONLY THE HISTORY OF THE EMPLOYEE'S INJURY AND A CONCLUSION AS TO THE PERCENTAGE OF DISABILITY IS BASED ON MEDICAL EVIDENCE WITHOUT PROBATIVE VALUE AND CAN NOT BE SUSTAINED.

■ It is well established that when reviewing the Workers' Compensation Court's orders and awards, the Supreme Court does not weigh conflicting evidence to determine the perponderance thereof, but examines the record only to ascertain whether there is any competent probative evidence to support the finding reviewed. Where no competent probative evidence supports a material fact in issue before the Workers' Compensation Court, the matter becomes a question of law determinable by the Supreme Court on review. *Chromalloy-American, Okla. Div. v. Wright,* 567 P.2d 71 (Okl.1977). Petitioner claims that the award in this case was based on incompetent and equivocal medical testimony. We

agree and conclude that the medical evidence, in light of claimant's continued post injury employment, was insufficient to support an award of permanent total disability.

■■■ In cases in which evaluation of disability depends on expert medical opinion, an award must be supported by competent evidence. *Haynes v. Pryor High School,* 566 P.2d 852, 854 (Okl.1977). Where the disability is of a character to require expert professional testimony to determine the cause and extent, the question is one of science and must be proved by expert testimony, the absence of which renders the evidence insufficient to sustain an award. *Chromalloy-American, supra.* In the instant case only medical reports from the physicians involved were admitted into evidence. Both letters merely recounted the history of claimant's injuries and concluded with an opinion regarding the percentage of disability sustained by Mr. Stockton. While the Workers' Compensation Court Rules recognize that it is costly and time consuming to have physicians actually appear at the time of the trial for the purpose of live testimony and thus encourage the production of medical evidence by verified or declared report, the Rules also specify the necessary information which will make such reports acceptable. Rule 20, in pertinent part, provides that the following shall be contained in such reports:

(a) A complete history of the claimant, including all previous relevant or contributory injuries with a detailed description of the present injury.

(b) The complaints of the claimant.

(c) The physician's findings on examination, including a description of the examination and any diagnostic tests and x-rays.

(d) The date and cause of the alleged injury and whether, in the physician's opinion, it is job-related.

(e) What medical treatment has already been rendered and what treatment, if any, the physician recommends for the future.

(f) What physical rehabilitative procedures have already been rendered and what rehabilitative procedures, if any, the physician recommends for the future.

(g) The period during which the claimant was temporarily and totally disabled. If the claimant remains temporarily and totally disabled, the physician should so indicate. If temporary total disability has already terminated, he must indicate the date upon which it terminated.

(h) The physician's evaluation of the extent of any impairment with a clear indication as to whether it is temporary or permanent in nature. (In the event that the injury occurred before July 1, 1978, the physician shall give his evaluation of the extent of the claimant's disability which shall be based on the claimant's capacity to perform ordinary manual or mechanical labor.)

(i) Any other detailed factors upon which the physician's evaluation of permanent impairment is based, including the fact that the evaluation is in substantial accordance with the "Guides to the Evaluation of Permanent Impairment" as published by the American Medical Association in 1977. Whenever the physician deviates from the "Guides", the basis for his deviation shall be stated together with full medical explanation. (If the injury occurred before July 1, 1978, the physician's testimony need not be based on or in accordance with the "Guides" but must include such detailed factors upon which his evaluation of permanent disability is based.)

As noted in paragraph (i) the medical evaluation is required to be in substantial accordance with the *Guides to Evaluation of Permanent Impairment* as published by the American Medical Association in 1977. Where deviation from the *Guides* occur, the physician is required to explain such deviation.

A cursory glance at the medical evidence in this case reveals that it is grossly defi-

cient and in substantial disaccord with the applicable statutes. The insufficiencies are numerous, but those that are notable include:

—a detailed description of the present injury;

—complaints of the claimant;

—findings on examination, including description of the exam and any diagnostic test and x-rays.

Further, there is no statement that the *Guides, supra,* have been complied with and no explanation regarding noncompliance. It is impossible to ascertain whether the examining physicians were even aware that such compliance is required. Finally, the injury of the claimant is never even described. "Dr. M" once stated that Mr. Stockton "injured his back." "Dr. A" refers to an injury on August 13, 1979 to "his low back and left leg," later described as the low back injury.

■ The general rule that has been upheld in this jurisdiction is that the physician's opinion as to disability need not be given in categorical terms, nor in the precise language of Workmen's Compensation Statute, and an award of compensation rests on competent evidence when it is supported by the general tenor and intent of the medical testimony. *Wade Lahar Construction Company,* 376 P.2d 221 (Okl.1962). However, there is no room for construction or provision for further inquiry when the legislature clearly expresses its intent, as it has in this case through Rule 20 and Rule 23. *Johnson v. Ward,* 541 P.2d 182, 185 (Okl.1975). In a recent interpretation of the Workers' Compensation Act of 1977, this Court said that "A plain reading of the statute reveals that the *Guides* shall be the basis for testimony and conclusions concerning permanent impairment..." *Goodrich v. Hilton,* 634 P.2d 1308, 1310 (Okl.1981). Additionally, we have previously held that a mere statement that a workmens' compensation claimant has a certain percentage of disability which happens to be greater than the amount awarded at a prior hearing is insufficient and that there must be evidence of a medical nature, indicated

through objective findings, tests, examination, etc. *Bryant-Hayward Drilling Company v. Cook,* 483 P.2d 1131 (Okl.1971). The evaluation must be more than a mere numbers game. *Reeves v. Central Sales Promotion, Northwestern National Insurance Company,* 632 P.2d 436 (Okl.App.1981). Therefore we hold that a mere medical opinion relative to the percentage of disability contained in a medical report is not sufficient to constitute "competency" under the new Act.

■ In summary, competent evaluation of permanent impairment requires adequate and complete medical examination, and substantial compliance with the *Guides.* Furthermore, when medical evidence is supplied by written medical report, substantial compliance with Rule 20 is mandatory. Such compliance, as clearly required by the legislature, will result in a reasonable degree of accuracy and uniformity, and will provide the Court with enough scientific information upon which to make an intelligent decision. The medical evidence in this case is insufficient to support the award of permanent total disability and thus the award cannot be sustained.

## III. CONCLUSION.

Claimant's post injury earnings created a presumption that he had retained a sufficient residual capacity for employment, which was not sufficiently rebutted by competent medical evidence. Therefore, he is not within the legislatively defined definition of total permanent disability and his award for such cannot be sustained. Additionally, the medical testimony in this case was not competent, probative evidence upon which an award of permanent total disability could be sustained. Specifically, it lacked compliance with Rule 20 and Rule 23 of the Workers' Compensation Court Rules, and consisted merely of the history of claimant's injuries and a conclusory statement regarding the percentage disability sustained by claimant.

We therefore reverse the Court of Appeals and the trial court. However, the parties should be given an opportunity to

present any further evidence of a competent nature in so far as is necessary to definitely settle the issue involved.

The order is therefore vacated for further proceedings in accord with the views expressed herein.

IRWIN, C.J., and LAVENDER, SIMMS, HARGRAVE, OPALA and WILSON, JJ., concur.

HODGES, J., dissents.