**Douglas R. ALFLEN, Petitioner,**

v.

**SPECIAL INDEMNITY FUND and The Workers' Compensation Court, Respondents.**

**No. 85718.**

Court of Appeals of Oklahoma, Division 2.

Feb. 20, 1996.

Rehearing Denied March 26, 1996.

Certiorari Denied June 12, 1996.

W.C. Doty, The Bell Law Firm, Norman, for Petitioner.

Robert Highsaw, State Insurance Fund, Oklahoma City, for Respondents.

## OPINION

GOODMAN, Presiding Judge.

This is an original proceeding to review an order of the Workers' Compensation Court finding it lacked jurisdiction to proceed in a claim against the Special Indemnity Fund. Based upon our review of the record and applicable law, we sustain the order.

### I

On July 22, 1994, claimant Douglas R. Alflen was awarded 33 percent permanent partial disability benefits for injuries he sustained in 1993 to his neck, back, chest, and left shoulder during the course of his employment as a derrick hand.

Subsequent to this adjudication, he filed a Form 3-F Employee's Claim for Benefits from the Special Indemnity Fund contending that, at the time of his 1993 injury, he was a physically impaired person as a result of a 1983 head injury for which he had been awarded 5 percent permanent partial disability benefits.

Title 85 O.S.1991, § 172(A), states in relevant part:

> If an employee who is a "physically impaired person" receives an accidental personal injury compensable under the Workers' Compensation Act which results in additional permanent partial disability so that the degree of disability caused by the combination of both disabilities is materially greater than that which would have resulted from the subsequent injury alone, the employee shall receive compensation on the basis of such combined disabilities. (Footnote omitted.)

The Fund argued the claimant's *adjudicated* permanent partial disabilities—33 percent

and 5 percent—totaled only 38 percent, and thus the claimant had not met the jurisdictional threshold of 85 O.S.Supp.1995, § 172(C), which states:

> Before a physically impaired person can proceed against the Special Indemnity Fund, the preexisting permanent partial disability and the permanent partial disability from the last injury must exceed a total amount equal to forty percent (40%) to the body.

At the May 26, 1995, hearing on the Form 3–F, the claimant submitted a medical report in which his expert reevaluated the individual impairments from the 1993 injury and found the claimant had in fact sustained fifty-nine percent permanent partial impairment which, when combined with his preexisting five percent disability, resulted in "a partial permanent impairment of *64% to the body as a whole,* for a material increase of *26%.*"

The Fund argued that the claimant's adjudicated disabilities do not exceed 40 percent, and that the percentage of material increase should not be considered in making that initial jurisdictional determination.

The trial court agreed with the Fund, and issued its order finding "the Court has no jurisdiction to consider claimant's request." The claimant seeks our review.

## II

The claimant contends that "any examining physician who examines a claimant for purposes of litigation against the Special Indemnity Fund must make an independent medical examination concerning the amounts of disability that the medical examiner finds and is not bound by the prior adjudications of the Workers' Compensation Court." He specifically relies upon *Special Indemnity Fund v. Stockton,* 653 P.2d 194, 200 (Okla.1982), wherein the court stated:

> Additionally, we have previously held that a mere statement that a workmens' compensation claimant has a certain percentage of disability *which happens to be greater than the amount awarded at a prior hearing* is insufficient and that there must be evidence of a medical nature, indicated through objective findings, tests, examinations, etc. (Emphasis added.)

Thus, the claimant argues that *Stockton* permits, indeed requires, an examining physician to express an evaluation of impairment independent of prior adjudications. We disagree with the claimant's contention.

Medical reevaluation of an adjudicated percentage of disability is relevant to a change-of-condition claim, as was the case in *Bryant–Hayward Drilling Company v. Cook,* 483 P.2d 1131 (Okla.1971). The quoted portion of *Stockton,* which predates the enactment of § 172(C), and cites *Bryant–Hayward,* merely stands for the proposition that a medical report submitted in support of a claim must be based upon objective findings.[1] The very nature of a claim for material increase is such that medical reports evaluating impairment resulting from the combined effect of injuries on the body as a whole are likely to conclude that the *combined effect* exceeds the total of the individual disabilities.

The Fund's liability, however, is purely derivative from the *previously adjudicated* obligations of the employer, which are supplemented only to the extent of any material increase in disability found to exist as a result of the combination of the disabilities that rendered the employee a physically impaired person, and the subsequent injury. *Special Indem. Fund v. Baker,* 900 P.2d 465, 468 (Okla.Ct.App.1995).

Evidence of a material increase does not permit a claimant to circumvent the legislatively mandated *predicatory threshold* established by § 172(C), which dictates that *before* a claimant may proceed against the Fund, his disabilities must exceed a total of 40 percent. The Fund's role in providing supplementary disability benefits is clearly dependent upon the extent of an employer's primary liability. When that primary liability has been adjudicated by the Workers' Compensation Court, jurisdiction to proceed against the Fund must be determined on the

---

**1.** *Stockton* was overruled on other grounds by *Special Indemnity Fund v. Choate,* 847 P.2d 796, 810 (Okla.1993).

basis of those established, adjudicated values. Unless the adjudicated percentages of disability exceed a total of 40 percent, the court lacks jurisdiction to proceed. Evidence of the combined effect of disabilities on the whole body, or any material increase therein, is admissible only after jurisdiction has been established.

There are public policy concerns to be considered as well. If a claimant were allowed to disregard court-adjudicated findings of disability, and freely substitute a new medical opinion in order to meet the § 172 threshold, a torrent of new claims against the Fund would result. It would likewise render the efforts of the trial court to adjudicate the disability futile, for no matter what evidence the trial court used to render its opinion, a substituted medical opinion could be used to override that finding.

Conversely, to allow the substitution of opinions could result in the Fund requiring a claimant whose combined court-adjudicated disabilities would otherwise meet the § 172(C) threshold, to submit to further independent medical examinations to obtain a "new" opinion of disability less than the court-established values. This is clearly not the intent of the legislature when it established the Fund or enacted § 172(C).

■ We therefore hold the trial court correctly determined it lacked jurisdiction to proceed with the claimant's action against the Fund.

ORDER SUSTAINED.

BOUDREAU and STUBBLEFIELD, JJ., concur.