## KANSAS EXPLORATIONS, Inc., v. WRIGHT et al.

No. 24494.   Sept. 10, 1935.

Paul E. Bradley, for petitioner.

Wm. M. Thomas, for respondent J. P. Wright.

PHELPS, J.   This is an original proceeding to review an award by the State Industrial Commission in favor of the respondent J. P. Wright against the petitioner, Kansas Explorations, Inc.

The record discloses that respondent, while working in the course of his employment at the Ritz Mine of petitioner, in Ottawa county, on September 12, 1929, was injured by being struck by a large slab of rock which fell from the roof of the mine.

Respondent was taken to the American Hospital, at Picher, Okla., where he was confined for 27 days. He was then taken home where he remained for several weeks long-er. He was under the care of petitioner's physician for a period of seven months.

At the time of the injury respondent's wages were $4.75 per day. Under the terms of a stipulation and agreement dated April 29, 1930, he was paid $1,309.50 for temporary total disability for 29 weeks and 43¾ weeks compensation for a 25 per cent. partial disability to his right leg. His compensation was paid at the rate of $18 per week. This stipulation and agreement was not approved by the Commission. On February 9, 1931, petitioner and respondent filed with the Commission a stipulation and receipt covering the matter of the compensation set forth in the former stipulation and receipt, and also provided for compensation in the sum of $75 for disfigurement to the left wrist. This stipulation and receipt was approved by the Industrial Commission on February 23, 1931. On May 9, 1931, respondent filed a motion to reopen the case and award additional compensation on the ground of a change of condition. Evidence was taken, and on June 20, 1931, the Commission made an order overruling claimant's motion to reopen, but made an additional award of $100 for disfigurement to the face. On November 5, 1932, respondent filed a second motion to reopen on the ground of a changed condition. Evidence was taken upon said motion, and on February 4, 1933, the Commission found that there was a change of condition, and further found:

"That the claimant is entitled to compensation from and after the 9th day of April, 1930, for a period of not to exceed 300 weeks, less a period of 43¾ weeks, for which compensation has heretofore been paid for a per cent. injury to a specific member, or up to and including February 8, 1931, and that he is entitled to compensation from and after February 8, 1931, to this date, or for a period of 103 weeks and 4 days, at the rate of $8 per week, or the sum of $829.33 in one lump sum, and to further compensation at the rate of $8 per week, until a total period of not to exceed 300 weeks have been paid, from and after April 9, 1930, or not to exceed 152 weeks and four days from this date, subject, however, to a reconsideration of the degree of such impairment by the Commission on its own motion or upon motion of either of the parties hereto."

Based on these findings the Commission entered the order appealed from.

As grounds for reversal, petitioner urges four propositions which we will consider in the order presented, the first of which is that:

"The evidence does not support the award in favor of respondent Wright because (a) it fails to show a change of condition resulting from the injury; (b) it fails to show any change in the permanent partial disability since the date of the order of the Commission of June 20, 1931, denying claimant's motion to reopen." .

Petitioner contends that there is no evidence supporting this claim of a change of condition since the former award of June 20, 1931, was made. With this contention we do not agree. Dr. Aisenstadt, petitioner's medical expert, testified in substance that on June 8, 1931, at the time of his examination of the respondent, the respondent was able to work. He testified as follows:

"Q. Is this man able to work? A. I don't know, sir. Q. Was he able to work at the time of the last examination? A. Yes, sir. Q. When was that? A. June 8, 1931."

The stipulation and receipts also are evidence of the respondent's former condition. G. S. & C. Drilling Co. v. Pennington, 151 Okla. 61, 1 P. (2d) 764; Tulsa Lead & Zinc Co. v. Utton, 163 Okla. 192, 21 P. (2d) 748. The respondent also testified as to his former condition, and also as to the condition just preceding the making of the last order and his evidence clearly shows that his condition had changed. He testified as follows:

"Q. Mr. Wright, have you attempted to perform manual labor? A. Yes, sir. Q. Can you do it? A. No, sir? Q. Why? A. Not able. Q. Describe the difference in the suffering you now have, the feeling in the back of the head as compared to the time you had a trial, June, 1931? A. Seems like kinda stiffing pain, running down the neck, seems like when drawing my head back at times. Q. Mr. Wright, how is the condition of your right arm and shoulder, compared to the condition in 1931, when Mr. Commons heard it? A. Seems like awful pain in the right arm and shoulder, feels numb. Q. Did it feel that way at the former trial? A. No, sir."

It is true the physician testifying for the respondent as to his condition at the last hearing had not treated him before the time of the original award, but the evidence clearly establishes the condition of the respondent as being totally disabled at the time of the last award and that such condition was due to the injury.

Dr. McNaughton testified that, in his opinion, his injuries were permanent.

Dr. Yazel testified as follows:

"Conclusions: From the above findings and the history given me, I made a diagnosis of optic neuritis and degeneration of the nerve and retina in both eyes and of the conters of both ears as a result of intercranial pressure which was brought about by the injury as described in the history of the case. Progressive in nature for which very little can be done. Q. Doctor, what per cent. of loss of vision has this man sustained in each of the eyes? A. Between 25 to 30 per cent. Q. What per cent. of loss of hearing this man sustained? By Judge Noble: To each eye? A. Practically the same. Q. What per cent.? A. Between 25 to 30, the hearing is down about 50 per cent. in the left ear and about 55 per cent. to 60 in the right ear."

Petitioner's second proposition is that the evidence does not support the finding that the respondent's earning capacity had decreased from $4.25 to $2.75 per day. This proposition is without merit. There was competent medical testimony to the effect that at the time the last award was made the respondent was unable to perform ordinary manual labor and that his earning capacity had been reduced to nothing. Dr. Aisenstadt testified that the respondent was able to work at the time of the former hearing in July, 1931. All this evidence, when considered together, clearly proves a loss of earning capacity as found by the Commission.

The third proposition urged by the petitioner is that:

"The Commission has no authority in law to award compensation at different rates in the same case."

The contention is based on the finding and award of the Commission for 43¾ weeks for 25 per cent. permanent partial disability to the right leg, at the rate of $18 per week, when by its order of February 4, 1933, the Commission awarded respondent compensation from and after April 9, 1930, for a period not to exceed 300 weeks, less 43¾ weeks at the rate of $8 per week. The respondent's temporary total disability ended April 9, 1930, and by stipulation and agreement, respondent was allowed 25 per cent. partial permanent loss of the use of the leg, or 43¾ weeks at $18 per week as compensation for a specific injury. The evidence shows that the respondent probably had some disability in the nature of "other cases" from the time the temporary total disability ended on April 9, 1930, down to the time of the award in 1933. Undoubtedly the respondent was entitled to the $18 per week for the 25 per cent. loss of the leg, or 43¾ weeks, and as the evidence indicated there might have been some other disability

to the leg during this 43¾ weeks, the Commission was justified in deducting from the 300 weeks the 43¾ weeks. The Commission has not awarded any compensation for permanent partial disability beyond the period of 300 weeks from April 9, 1930, the date of the termination of the temporary total disability, hence the same question is not presented here as was presented in the case of Industrial Track Construction Co. et al. v. Calthrop, 162 Okla. 274, 19 P. (2d) 1084, and in the case of Magnolia Pet. Co. v. Allred et al., 160 Okla. 126, 16 P. (2d) 78, and hence those cases have no application.

The petitioner's fourth proposition is as follows:

"The Commission had no authority in law to award compensation for a longer period than 300 weeks from the date of the termination of temporary total disability, less the period elapsing between that date and June 20, 1931, when the Commission denied respondent Wright's first application to reopen and found there had been no change of condition."

The application upon which the award of February 4, 1932, was made alleged that such change of condition had taken place since June 20, 1931, the date of the last preceding award, and the evidence showed that there had been such change of condition. This gave the Commission the right, under the provisions of section 7296, C. O. S. 1921 (sec. 13362, O. S. 1931), to review the former award and "make an award ending, diminishing or increasing the compensation previously awarded." The order of June 20, 1931, did not find that there had been no change of condition, but simply denied the motion to reopen the cause and award further compensation. The evidence offered to prove a change in condition upon which the order of June 20, 1931, was based was subjective and the Commission did not find it sufficient to show a condition at that time as to award additional compensation. However, in the light of additional evidence the Commission was justified in making its order of February 4, 1932, and finding that there had been a change of condition since the order of June 20, 1931, had been made, and that there had been such a change since the termination of the period of temporary total disability. The disability was progressive in nature and the two awards are not inconsistent. In Loffland Brothers Co. v. Velvin, 152 Okla. 83, 3 P. (2d) 855, this court said:

"There is a change in the conditions, under section 7296, C. O. S. 1921, when there is a change in the condition of the claimant by reason of his condition improving or growing worse or complications developing after a hearing to determine liability, which could not have been and were not determined in the first instance, or after a subsequent hearing to increase or diminish the award, or to change the findings and orders theretofore made in said cause; and it is apparent to the rational mind that there has been a change in the condition of claimant after the last hearing and as a result of the original injury."

The condition of the respondent in this case, as it developed after the order of June 20, 1931, was made, threw light on his condition prior to that time, and the Commission had the right to consider all of the evidence in determining when his permanent partial disability began.

The petitioner's fifth proposition is as follows:

"Commission could not award compensation for any greater percentage of disability than the difference between the percentage of disability at the time of the first award, and the percentage of disability at the time of the last award."

In support of this proposition, petitioners cite Humble Oil & Refining Co. v. Noble, 161 Okla. 35, 16 P. (2d) 1072. The rule of law there announced applies only to cases of percentage disability to specific members and is not applicable in cases such as the instant case, where the award is based upon decreased earning capacity as a result of a change in condition under the "other cases" provision of the law.

The award is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS and CORN, JJ., concur.