CAPITOL WELL SERVICING COMPANY
and Mid-Continent Casualty Company, Petitioners,

v.

Mike LEVESCY and The State Industrial
Court, Respondents.

No. 39622.

Supreme Court of Oklahoma.

May 23, 1962.

Grady H. Holloway, W. L. Funk, and John W. Lee, Oklahoma City, for petitioners.

Lester D. Hoyt, Oklahoma City, for respondents.

JACKSON, Justice.

Under review in this proceeding is the trial tribunal's order allowing claimant additional benefits during the continuance of his recurrent interval of temporary incapacity.

While engaged for the employer on June 30, 1958, claimant admittedly sustained an accidental injury to his back. Placed by the employer under the care of Dr. E. M., an orthopedist, he initially received outpatient treatment consisting of diathermy and massage. His complaints continued without improvement or remission. On November 13, 1958, claimant underwent corrective surgery, in the course of which Dr. E. M. carried out excision of a ruptured intervertebral disc and partial fusion. Following the operation claimant remained in a body cast for about six weeks and then wore a corset brace. Although he returned to work on January 16, 1959, he was not dismissed from active follow-up care until April 2 of that year. As disclosed by Dr. E. M.'s report, claimant did then have "a good fusion of the lumbosacral joint" and "should get along satisfactorily in due time". The aggregate period of his total incapacity lasted nearly ten weeks, during which he received temporary benefits. On June 3, 1959, claimant was awarded compensation for 20 per centum permanent (partial) disability due to the residual effects of his injury.

His pain continued with increased intensity. He quit work on August 7, 1959, and on August 18, consulted Dr. S. M. "for an independent opinion". On the latter date he also filed a motion to reopen, asserting the recurrence of temporary total disability and seeking additional medical treatment. According to Dr. S. M., claim-

ant's "symptomatic complaints" were "genunine" and accompanied by "objective findings". The doctor recommended "various conservative measures" but "no further surgical exploration at this time". From August 21 to August 31, 1959, claimant remained in the hospital where, under the care of Dr. S. M., he was placed in a flexed position, received electrical heat treatments, and was given therapeutic exercises. Released on October 2, 1959, from active treatment by Dr. S. M., he returned for a check-up on October 21. On this visit he complained that his symptoms "have remained pretty much the same as they were before his surgery except for the relief of pain in his left thigh", and that "Whenever he tries to do anything such as lifting or stooping his back pain becomes greatly aggravated". Following this examination, Dr. S. M. reported under the date of October 23, 1959, as follows:

"There is some asymmetry of the lumbosacral facets. I am unable to determine exactly whether all of the spinous process of L–4–5 and S–1 are present or not. *Certainly, I am unable to determine whether or not there is any bony parts of grafts included in the picture.* Compared with the x-rays taken on August 18 in my office they look pretty much the same. *I see no evidence of further bony fusion although this is difficult to ascertain.* Joint interspaces bilaterally between L–4–5 and L–5 and S–1 are visible in the August films and very definitely there is absence of the 3rd, 5th and 4th lumbar spinous processes in both films. The AP film taken in my office is of very poor quality, also. * * *

"*This claimant very definitely has non-union between the fourth and fifth lumbar segments of the spine and apparent union between the fifth lumbar and the first sacral segments.* It is my opinion that he needs further surgery and it may be necessary to carry this out in order to give him some reli*ve* of pain from the aggravation of activi-

ties. *He needs an arthrodesis* (operation to promote a union of bones) *of the L–4–5 segment of the spine.* His temporary total disability was from August 11, 1959 to the date he returned to work on October 2, 1959." (Emphasis ours.)

Dr. E. M., who examined claimant for the employer on November 10, 1959, apparently agreed with Dr. S. M. that claimant had a relapse of his back condition, though he maintained that the "Biplane x-rays made today reveal good fusion of the lumbosacral joint". He attributed the complaints "* * * not to lack of fusion at the operative site, but probably due to some adhesions causing tightness and some discomfort to his back when he tries ιo be active". The doctor cautioned, however, that "such a condition as he has will have a tendency to *continue to relapse*".

After several hearings on claimant's motion to reopen for additional compensation during his healing period, the trial tribunal found on February 4, 1960, that he was in fact temporarily totally disabled from August 21 to October 2, 1959, and allowed him compensation for this period, as well as reimbursement for self-procured medical and hospital expenses.

The proceeding sought to be reviewed had its inception when claimant filed his second motion to reopen on April 13, 1960. As revealed by the record, he presented himself to Dr. S. M. on March 15, 1960, and was once again found to be in need of "conservative treatment in the hospital". After further examination on October 18, 1960, Dr. S. M. stated that "this gentleman (claimant) is showing some increase in difficulty with his low back and radiation into the left leg and should have a conservative period of back care in the hospital and *possibly re-exploration for possible pseudoarthrosis* (false union of joints) *of his fusion area*". On November 3, 1960, Dr. S. M. again placed claimant in the hospital for bed rest and physiotherapy. While claimant remained under this treatment, Dr.

S. M. concluded in his report of November 16, 1960, as follows:

> "*I am of the opinion after careful study that this gentleman has a pseudoarthosis of L–4–5 segment of the spine where the spinal fusion was carried out and is in need of further surgical intervention.* I am hereby making this recommendation at this time and believe that provisions shoul*e* be made under the Workmen's Compensation Law for the carrying out of this treatment." (Emphasis ours.)

Employer's physician, Dr. E. M., who saw claimant on June 14, 1960, concluded that he had "signs of nerve root irritation at the fourth and fifth lumbar space level on the left side" and will show no improvement unless the condition is "explored for relief of his discomfort". Dr. E. M. again pointed out that "Biplane x-rays * * * reveal he has good fusion of the lumbosacral joint but they show some narrowing between the fourth and fifth lumbar vertebrae". The opinions of both Drs., S. M. and E. M., was contradicted by yet another physician, Dr. F., who examined claimant for the employer on August 16, 1960. The latter attributed claimant's difficulty, not to any "traumatic pathology", but to "typical degenerative arthritis" in the lumbar region of the spine. He noted, however, in his report:

> "X-rays of the lumbar spine revea*ls* that the patient has had an amputation of the spinous processes in the lumbar region of the spine. The spinous processes of L–3, 4, 5 and S–1 appear have been amputated. *There does not appear to be any evidence of any fusion in the patient's back. * * *"* (Emphasis ours.)

On November 22, 1960, the trial judge denied claimant's second motion to reopen, finding that "claimant's change of condition, if any, for the worse, is due to progressive osteoarthritis disease and not due to the accidental injury and surgery therefor * * *". Claimant appealed to the trial tribunal en banc, which affirmed the trial judge's order on December 19, 1960.

Later the same day (December 19) claimant's counsel filed a third motion to reopen the claim on a further change in condition, seeking benefits for temporary incapacity and medical care. At the hearing conducted on January 11, 1960, *the evidence disclosed without dispute that:* (a) claimant remained in the hospital from November 3, 1960, to December 7, 1960; (b) a surgical exploration performed by Dr. S. M. on November 22, 1960, confirmed his prior opinion that claimant's symptoms were due to the failure of fusion at the L–4–5 and L–5 S–1 segments, which condition resulted from prior operation by Dr. E. M.; (c) arthrodesis (surgery to promote union of joints) of the lumbo-sacral spine was successfully carried out on November 22, 1960; (d) claimant was "incarcerated in the plaster spica case", and his healing period will last approximately four to six months.

On January 12, 1961, the trial judge entered an order allowing continuing temporary total benefits from November 3, 1960. Payments accruable under the prior award for permanent disability were ordered suspended until cessation of the healing period.

Employer challenges the order of January 12, as erroneous and unauthorized by law. Its contentions are: (a) there is an entire absence of evidence to show that claimant's physical condition underwent a "substantial" change subsequent to November 22, 1960—the date of the last prior order; (b) the trial tribunal erred, as a matter of law, in allowing temporary benefits to commence on November 3, 1960, a point of time antedating the last prior order of November 22, 1960. The points at issue will be discussed in the order in which they stand posed.

The primary, if not the sole, issue formed in the proceeding from which the order of November 22, 1960, emerged, was whether claimant's admitted exacerbation in the lumbo-sacral region of the spine was causally related either to his original injury or to

the legitimate consequences thereof. All physicians whose reports appear in the record were in agreement that claimant did have a "difficulty". There was, however, a wide divergence of opinion as to the source of the trouble. For the employer, Dr. E. M. claimed the presence of a "good fusion" and diagnosed the difficulty as a possible nerve root irritation which would require further surgical exploration; Dr. F., who did find evidence of non-union in the lumbo-sacral segments, ascribed the symptoms to osteo-arthritic disease process. Claimant's own physician, Dr. S. M., regarded the complaints as attributable to pseudo-arthrosis from the prior back operation. Though not at first convinced that surgical intervention was indicated in order to relieve discomfort and alleviate the pathology, he later determined, after careful and prolonged study, that claimant could not be helped without an exploratory operation. When this evaluation was made, the causal connection between claimant's acute condition and the suspected pseudo-arthrosis still rested on a foundation of doubt and conjecture, since the diagnosis remained unaided by positive clinical and demonstrative data. It was only after surgical exploration was carried out by Dr. S. M. on November 22, 1960, that the impact of pseudo-arthrosis on claimant's disability became an established scientific fact, thus presenting for the trial tribunal's consideration a new and additional factor which was not, nor could have been, determined by the order of November 22, 1960. Oklahoma Gas & Electric Co. v. State Industrial Court, Okl., 366 P.2d 609, 613.

■ A change in claimant's condition may be established in contemplation of the Workmen's Compensation Law when a pathology, not ascertainable before in terms of its relation to, and effect upon, compensable disability, is shown to have manifested itself and become detectable only through developments occurring subsequent to the last prior order. Oklahoma Gas & Electric Co. v. State Industrial Court, supra; Skelly Oil Company v. Sumner, Okl., 347 P.2d 219; Phillips Petroleum Co. v. Anguish et al., 201 Okl. 691, 209 P.2d 689.

■ There is therefore competent evidence to support the factum of a changed condition which: (a) was attributable to the legitimate consequences of claimant's prior corrective operation for a compensable pathology; and (b) occurred on its discovery through the exploratory surgery on November 22, 1960. See in this connection, Skelton Lead & Zinc Co. v. Bagby, 166 Okl. 214, 27 P.2d 168; Barnsdall Ref. Co. v. Ramsdall, 149 Okl. 99, 299 P. 499; Seismograph Service Corporation v. Cosby, Okl., 317 P.2d 215, 218.

We next proceed to discuss employer's argument that there was error in allowing claimant's benefits to commence on November 3, 1960—i. e. from a point of time which antedated the prior adverse decision of November 22, 1960. In this connection claimant contends that the order of January 12, 1961, granting him benefits during the healing period, operated in its effect to vacate both the adverse order of November 22, 1960, and the affirmance thereof, on December 19, 1960, by the State Industrial Court en banc.

■ Upon entry of the adverse order on November 22, claimant could have tendered the newly discovered evidence of his exploratory surgery in an effort to reopen the case before the trial judge; he could also have sought similar relief before the trial tribunal en banc which, under our past decisions, has the power to remand a cause to the trial judge for the purpose of allowing introduction of additional proof. Rodriquez v. Utilities Engineering & Construction, Okl., 281 P.2d 946; Farmers Cooperative Association v. Madden, Okl., 356 P.2d 741, 745. So far as the record discloses, claimant did not seek nor secure such relief. Neither did he invoke the jurisdiction of the State Industrial Court en banc to vacate, within the time allowed by law, its own order of December 19, 1960, affirming on appeal the trial judge's decision of November 22, 1960. See, Jones v. Troup-

Moore & Hall Drilling Company, Okl., 359 P.2d 577. As revealed by the unmistakable terms of his "motion to reopen", filed on December 19, 1960, claimant did not seek to vacate any prior orders, but merely initiated a new and distinct proceeding for additional compensation based on a change in condition. In this state of the record, the order of January 12, 1961, did not operate to either vacate, impair or disturb the final and conclusive effect of the trial judge's determination on November 22, 1960.

In the exercise of its continuing jurisdiction under 85 O.S.1961 § 28, the State Industrial Court may not review, change, disturb, vacate or modify its prior orders, which have become final, to correct errors made therein. White v. Shell Oil Co., 193 Okl. 374, 143 P.2d 825. As a corollary of this rule, the trial tribunal is without power to reach into the period covered by its last prior adverse and conclusive adjudication in order to award benefits for any interval included therein. Payne Drilling Co. v. Shoemake, 183 Okl. 10, 79 P.2d 806; Standard Brands, Inc. v. Gregor, Okl., 328 P.2d 181, 183. There was hence error in allowing the compensation to begin at a point of time preceding November 22, 1960—the date of the trial judge's last prior order.

Since the *undisputed evidence* in the record amply establishes a change of condition occurring on November 22, 1960 and attributable to the legitimate consequences of claimant's compensable injury, the error in fixing the time at which benefits began to run does not require vacation of the order (of January 12, 1961). Standard Brands, Inc. v. Gregor, supra. When any portion of a decision is in accord with the evidence, this court may direct the State Industrial Court to enter such award as is warranted by the record and authorized by law. Kleener Coal Company v. Hamilton, Okl., 363 P.2d 373, 377.

The order allowing continuing compensation for temporary total disability is accordingly modified to allow such payments from and after November 22, 1960, and until cessation of claimant's healing period, but not to exceed the aggregate of 300 weeks under both past and present orders. That portion of the order under review which allows temporary total benefits for the period from November 3 to and including November 22, 1960, is hereby vacated, with directions to modify the payment schedule accordingly.

Except as so modified the award is sustained in all other respects.