**BILL HODGES TRUCK COMPANY,
Own Risk, Petitioner,**

v.

**Wilton Ray GILLUM and The Workers'
Compensation Court of the State of
Oklahoma, Respondents.**

No. 66830.

Supreme Court of Oklahoma.

May 31, 1989.

Chris Sturm, Oklahoma City, for petitioner.

William O. West, Messrs. West and Synar, Edmond, for respondents.

OPALA, Vice Chief Justice.

The issues presented for review are: 1) May proof of a changed condition be effectively dispensed with by an employer's in-court stipulation never sought to be withdrawn with leave of the trial tribunal? and 2) Did the worker meet his burden to establish that the heart transplant he seeks should be approved as a "reasonable and necessary" expense incident to recovery from a compensable accidental injury? We answer the first question in the affirmative and the second in the negative.

I

THE ANATOMY OF LITIGATION

On August 20, 1982 and May 22, 1983 Wilton Ray Gillum [worker] sustained job-related accidental injuries to his heart from myocardial infarctions, for which he claimed compensation. An agreed award of October 20, 1983 (amended nunc pro tunc on November 23, 1983) allowed him both temporary total and permanent total disability. The order included the standard clause requiring the employer to pay "all reasonable and necessary medical expenses incurred by claimant as a result of said injury". This award became final when

neither party challenged it by a plea for corrective relief.

The worker's Form 9, filed in February 1986 and followed by two amendments in March 1986, seeks additional temporary disability and approval of a heart transplant with incidental medical care. The latter request was heard on April 8, 1986.[1] *During the hearing the parties stipulated the only issue to be submitted for the court's decision was whether a heart transplant constitutes a "reasonable and necessary" expense of an accidental injury to be borne by the employer.*[2] The trial judge's May 1, 1986 order provides that a heart transplant procedure falls within the category of reasonable and necessary medical expenses previously ordered on October 20, 1983.[3] It is this order, later affirmed by a three-judge appellate panel, that is now on review.

Below the employer resisted the quest for organ substitution by contending that a heart transplant is not a reasonable and necessary medical expense within the purview of health services mandated by 85 O.S.1981 § 14.[4] On review the employer appears to retreat from, if not abandon, this defensive theory. It asserts instead that (1) the compensation court "lacked jurisdiction" to enter the award because the worker had failed to press a § 28[5] reopening claim by proper motion and to prove a change in his physical condition arising since the last prior order and (2) a heart transplant is an organ substitution procedure that is not comprised within the terms of the last prior (October 20) order requiring the employer to pay all "reasonable and necessary medical expenses incurred."

## II

## THE TRUE LEGAL ATTRIBUTES OF THE APPLICATION UNDER REVIEW

### A. *The worker's theory*

The worker asserts that the expenses of transplant procedure were correctly found, in the order on review, to have been included within the sweep of health services directed to be furnished by the terms of the October 20 award, inasmuch as that order was treated below by the parties as one which authorized *continuing postaward medical treatment.* We reject this argument as unfounded and unsound.

■■■ A permanent disability award constitutes a solemn adjudication that the worker's healing period has come to an end and his condition or state of health has reached the very optimum that is *then* medically attainable.[6] The law assumes that a condition of health, once adjudged to be permanent, is stationary. Stationary conditions generally require no medical care or maintenance. The moment permanent disability begins, the right to receive medical treatment ceases by operation of

---

1. While the appellate briefs and the trial judge's May 1, 1986 order give the date of hearing as April 8, 1986, the court reporter's transcript states that it was held on April 18, 1986. Because the discrepancy is of no legal moment, we need not resolve it.

2. See *infra* note 20 for the terms of the employer's open court stipulation.

3. The October 20, 1983 order states in part that: "... respondent shall pay all *reasonable and necessary medical expenses* incurred by claimant as a result of said injury." [Emphasis supplied.]

4. The terms of 85 O.S.1981 § 14 provided in pertinent part:
"The employer shall promptly provide for an injured employee such medical, surgical or other attendance or treatment, nurse and hos-

pital service, medicine, crutches, and apparatus *as may be necessary after the injury.* * * *"* [Emphasis added.]
The quoted language remains unchanged by a later amendment to § 14 (see Okl.Sess.L.1986, Ch. 222, § 12).

5. For the text of 85 O.S.1981 § 28 see *infra* note 10.

6. *Hondo Petroleum Company v. Piearcy,* Okl., 376 P.2d 1012, 1013 [1962]; *Capitol Well Servicing Company v. Levescy,* Okl., 371 P.2d 905, 908 [1962]; *Collins Construction Company v. Berry,* Okl., 370 P.2d 11, 12 [1962]. When temporary disability stops, the claimant is, in contemplation of law, in a medically stable condition that requires no further medical treatment. *Pruitt v. Mid–Continent Pipe Line Company,* Okl., 361 P.2d 494, 497 [1961].

law except, of course, for certain limited, tightly structured and explicitly authorized situations.[7] Permanent disability, partial or total, is *presumed* to continue *until recurrence* of temporary disability *is established.*[8] In contrast, temporary disability, once shown, is not *presumed* to *extend for any* length of time; its duration must be proved from the beginning to its very end.[9] Once adjudged to have permanent disability, a worker is entitled to medical attention only upon *establishing recurrence of the postaward healing period in a reopening proceeding* under 85 O.S.1981 § 28.[10]

■ The October 20 award for permanent disability cannot serve as authority for medical treatment *beyond* its date. The worker's postaward quest for additional medical care—now on review—is in law but a § 28 reopening claim, which must be based on a changed condition that necessitates heart transplant surgery. In that proceeding the worker was required to establish an *after-occurring (postaward) need* for the requested medical procedure. The § 28 reopening relief cannot be employed to correct either mistakes or deficiencies in a prior award or order.[11]

**B.** *The worker's postaward request is not one for a "definitional clarification"*

■ The claimant's postaward request for organ substitution surgery may not be treated as but a definitional clarification of the October 20 award, insofar as the latter authorizes medical services. This case differs from *Orrick Stone Company v. Jeffries,*[12] where a postaward proceeding for determination of services that were due was sanctioned. We do not deal here with a *stationary paraplegic or quadriplegic patient* found to require day-to-day, long-term maintenance care.

■ The *Orrick Stone* category of health or nursing service claims affordable under § 14 embraces *day-to-day maintenance care.* These services do not call for an alteration or improvement of a worker's physical condition. Recurrence of temporary disability is not required for an order directing the employer's provision of day-to-day maintenance care. The law authorizes that type of health services without a need for showing a postaward change of conditions. Because this postaward claim cannot be regarded as one for day-to-day maintenance care but is rather to be treated as one for an *invasive surgical proce-*

---

7. For a discussion of the situations in which continued medical care may be authorized *after* an adjudication of permanent disability *without* a change in conditions, see Part II(B), *infra,* and the cases cited *infra* note 12.

8. *Hondo Petroleum Company v. Piearcy, supra* note 6 at 1013; *Capitol Well Servicing Company v. Levescy, supra* note 6 at 908; *Collins Construction Company v. Berry,* Okl., *supra* note 6 at 12.

9. In *Bama Pie, Inc. v. Roberts,* Okl., 565 P.2d 31, 34 [1977], the court held that compensation for temporary total disability must cover a defined period, is limited to, and may not extend beyond, this interval of time.

10. In *Hondo Petroleum Company v. Piearcy, supra* note 6 at 1013, this court said that *"[r]ecurrence of temporary incapacity* either before or after a determination of permanent partial disability is made *constitutes a change of condition within the contemplation and purview of 85 O.S.1961 § 28,* and affords a proper basis for an order allowing *additional* compensation." [Em-

phasis added.] See also *Nuway Laundry Company v. Hacker,* Okl., 396 P.2d 659, 663 [1964]. The terms of 85 O.S.1981 § 28 provide in pertinent part:

"Upon *its own motion* or upon the *application of any party* in interest, on the ground of a *change in conditions,* the Court may at any time review any award, and, on such review, may *make an award* ending, diminishing or *increasing the compensation* previously awarded, subject to the maximum or minimum provided in the Workers' Compensation Act...." [Emphasis added.]

11. In *Capitol Well Servicing Company v. Levescy, supra* note 6 at 910, the court said that the trial tribunal "[i]n the exercise of its continuing jurisdiction under ... § 28 ... *may not review, change, disturb, vacate or modify its prior orders, which have become final, to correct errors made therein.*" [Emphasis supplied.]

12. *Orrick Stone Company v. Jeffries,* Okl., 488 P.2d 1243, 1249 [1971]; see also *Depue v. Barsh Truck Lines,* Okl., 493 P.2d 80, 83–84 [1972];

*dure designed to produce an anatomical change*, it must meet the same standards of proof as those which are applicable to a § 28 reopening proceeding for additional medical services on recurrence of an injured worker's healing period.[13]

### III

### ABSENCE OF EVIDENCE TO SHOW A CHANGED CONDITION IS AT BEST A FAILURE OF PROOF RATHER THAN A JURISDICTIONAL DEFECT

■ The Workers' Compensation Court has exclusive original jurisdiction over *all proceedings* for compensation which is legally due for an on-the-job injury.[14] *This statutory cognizance includes all conceivable § 28 proceedings.*[15] The trial tribunal's power to reopen a claim *over which it already has acquired jurisdiction* cannot be drawn into question.[16]

■ The § 28 requirement that a reopening claim be predicated on a worker's subsequently changed condition is not to be viewed as a jurisdictional barrier in the sense that the necessary elements of proof cannot be supplied by agreement or be waived by the parties; rather, it should be regarded as an essential or indispensable

evidentiary component—a *sine qua non* of the required proof. A stipulation by the parties that is intended to dispense with proof of that indispensable element in a reopening claim *does not extend beyond the tribunal's jurisdiction.* It is hence fully effective.[17] An award of the Workers' Compensation Court in a § 28 proceeding in which there was no proof of a changed condition is not fraught *with jurisdictional infirmity.* It is simply *erroneous for want of essential proof* and subject to vacation on direct review.[18] To the extent that our past decisions may have inadvertently referred to proof of a changed condition in a § 28 proceeding as "a jurisdictional prerequisite," their language is hereby withdrawn and disapproved.[19] Failure of critical proof to support a cognizable claim does not affect the tribunal's jurisdiction over the proceeding before it.

Because we find the worker's quest for organ substitution should be viewed as one to reopen the original claim and hence within the compensation court's cognizance, we must next decide whether there was a failure of proof to show a changed condition or whether the employer's in-court stipulation was sufficiently broad to dispense with this probative requirement.

*Fox–Smythe Transportation Company v. McCartney,* Okl., 510 P.2d 686, 689–690 [1973].

13. The worker's claim for replacement of vital organs is also distinguishable from compensation for disfigurement. Disfigurement is in a different class of nonphysical injury for which a separate rubric of compensation is provided by 85 O.S.1981 § 22. Cosmetic surgery is designed to reduce the employer's statutorily imposed liability. Disfigurement is thus explicitly compensable while replacement of vital organs is not expressly mandated by statute. See also *Akers Auto Salvage v. Waddle,* Okl., 394 P.2d 452, 454–455 [1964]; *Safeway Stores, Inc. v. Hart,* Okl., 550 P.2d 1327, 1329 [1976].

14. *Atlas Rock Bit Serv. Co. v. Henshaw,* Okl., 591 P.2d 294, 295 [1979]; *Jones Drilling Company v. Woodson,* Okl., 509 P.2d 116, 118 [1973].

15. See *supra* note 10 for the pertinent parts of 85 O.S.1981 § 28.

16. *Williams v. Central Dairy Products Co.,* 205 Okl. 266, 236 P.2d 984, 985–986 [1951]; *Special*

*Indemnity Fund v. Lewis,* 200 Okl. 471, 196 P.2d 684, 686 [1948].

17. See *Sterling Milk Products Co. v. Underwood,* 167 Okl. 361, 29 P.2d 937, 938 [1934]. When an award is made on the basis of stipulated facts, the stipulated facts can be considered as evidence. *Oklahoma Portland Cement Co. v. Smith,* 181 Okl. 313, 73 P.2d 446, 448 [1937]; *Kansas Explorations v. Wright,* 173 Okl. 411, 49 P.2d 65 [1935] (syllabus ¶ 1); *Tulsa Lead & Zinc Co. v. Utton,* 163 Okl. 192, 21 P.2d 748 [1933] (syllabus ¶ 2).

18. *Ferguson v. Ferguson Motor Co.,* Okl., 766 P.2d 335, 338 [1988]; *Woodrow v. Ewing,* Okl., 263 P.2d 167, 171 [1953].

19. See in this connection, *Elk City Cotton Oil Co. v. Lunsford,* 179 Okl. 38, 64 P.2d 858, 859 [1937]; *Nu–Way Laundry v. Wilson,* 165 Okl. 149, 25 P.2d 657, 658 [1933]; *Oklahoma Pipe Line Co. v. State Industrial Commission,* 149 Okl. 162, 299 P. 180, 183 [1931]; *Bedford–Carthage Stone Co.*

## IV

### THE EMPLOYER'S IN-COURT STIPULATION IS SUFFICIENT TO DISPENSE WITH PROOF OF A CHANGED CONDITION

While employer's counsel agreed at the hearing that the "nature of the [reopening] claim is for additional medical [services]," he challenged the *sufficiency of the expert evidence* to bring the heart transplant claim within the purview of the compensation law.[20]

 Stipulations made in open court are solemn admissions of fact. They are binding and conclusive on the parties as well as on the court.[21] Withdrawal of a stipulation without the consent of the opposing party may be allowed *only* by leave of court upon a showing of good cause.[22] A stipulation of fact between an employer and employee must conform to the Workers' Compensation Act, as well as to the rules of the tribunal, and must be approved by the judge as binding on the parties.[23] Neither the trial judge nor the three-judge panel was ever asked to relieve the employer of the legal effect of its broad stipulation upon the latter's showing that the terms of the in-court concession to the worker were avoidable or upon some other tenable legal ground.

 Implicit in the employer's broad, open-court pre-hearing stipulation is its clear admission that the worker's condition has reverted to a healing period stage and that he is thus in need of further medical treatment. The stipulation is hence sufficient to dispense with proof that would establish a *postaward recurrence of the healing period.* Because by the stipulation the *medical proof's sufficiency* was specifically characterized as an issue in contest, we can find no employer's *waiver of expert evidence* to show a *causal link between the worker's need for the requested transplant* and his adjudicated accidental injury. Neither may the stipulation be viewed as broad enough *to dispense with proved scientific justification for the procedure* as an employer-borne expense for curing a compensable condition.

## V

### PROOF ADDUCED IN SUPPORT OF THE REOPENING CLAIM

 While we hold the employer bound by its implicitly stipulated change of the claimant's condition, we find the medical proof adduced in support of the worker's reopening claim insufficient to support the imposition of liability for a postaward heart transplant surgery. The worker's medical evidence is indeed deficient. It does not connect the asserted need for further health care with the prior accidental on-the-job injury.[24]

Two doctors submitted letter-reports regarding the worker's heart condition. Neither of these shows any causal link between the accidental injury and the present

---

*v. Industrial Commission,* 119 Okl. 231, 249 P. 706, 708 [1926].

20. The employer made the following stipulation at the April 8, 1986 proceeding:
 "At this time Respondent *would stipulate* as to the Court's prior order of October 20th, 1983 and the nature of the claim is for *additional medical* and we would object to that believing that the heart transplantation sought by the Claimant does not come within the contemplation of 85 OS 1981, Section 14, rather that it is in the nature of an experimental treatment and that *we feel the Claimant will not sustain the burden of proof showing that it is reasonable and necessary.*" [Emphasis added.]

21. *Nanonka v. Hoskins,* Okl., 645 P.2d 507, 508 [1982]; *City of Lawton v. Lewis,* Okl., 566 P.2d 133, 134 [1977]; *Yamie v. Willmott,* 184 Okl. 382, 88 P.2d 325, 326 [1939].

22. *Coon v. Jones,* Okl., 303 P.2d 425, 427–428 [1956]; *Smith v. Owens,* Okl., 397 P.2d 673, 685 [1965]; *McFarling v. Demco, Inc.,* Okl., 546 P.2d 625, 630 [1976]; *Nanonka v. Hoskins, supra* note 21 at 508.

23. *City of Lawton v. Lewis, supra* note 21 at 134; *Wentz v. Brookshire,* 150 Okl. 92, 300 P. 652 [1931] (syllabus ¶ 1).

24. *National Zinc Company v. Thomas,* Okl., 554 P.2d 1, 3–4 [1976]; *Nuway Laundry Company v. Hacker, supra* note 10, at 663; *Capitol Well Servicing Company v. Levescy, supra* note 6 at 909; *Payne Drilling Co. v. Shoemake,* 186 Okl. 345, 97 P.2d 881, 882 [1940]; *Montgomery v. State Industrial Commission,* 177 Okl. 586, 61 P.2d 209, 210–211 [1936]; *Marlow v. Commerce Mining & Royalty Co.,* 163 Okl. 198, 21 P.2d 746 [1933].

condition. Dr. A.'s January 24, 1986 report refers to the worker's condition as "severe coronary artery disease which is clearly inoperatable" [sic] and suggests that "the heart transplantation is the next treatment medically." Dr. Z.'s report of March 13, 1986 states that the worker has "less than one year to live" and that with "the heart transplantation, he has a 65% chance of living at least five years." According to Dr. Z., the worker has "severe coronary artery disease which is clearly inoperable" and that "the next medical treatment necessary ... is a heart transplantation."

In today's pronouncement we need not, and do not, assume that payment for an anatomical alteration of an injured worker's body by organ substitution, much like the provision of artificial limbs, lies *within* the purview of or *dehors* the employer's statutory liability for health services mandated by § 14. Even if we made this assumption, the award on review could not be saved from vacation. There is here no competent evidence to show a causal nexus between the organ substitution sought and the compensable harm attributable to the accidental injury. The medical proof shows no more than that the worker has "severe coronary artery disease" and a heart transplant is "the next logical procedure." It does not establish the changed condition as a legitimate consequence of the accidental injury. Because there is no competent evidence to link the heart transplant need to the industrial injury, the claimed surgical procedure cannot qualify as a *reasonable and necessary compensable expense.* There was clear legal error in awarding the worker the cost of the proposed organ substitution procedure.[25]

■ The award is vacated and the proceeding remanded to the trial tribunal for its reconsideration[26] in a manner consistent with this pronouncement and with directions to treat the worker's request as his § 28 reopening claim for the provision of additional health services due one under the authority of § 14 on recurrence of a claimant's healing period.[27]

HARGRAVE, C.J., and LAVENDER, DOOLIN and KAUGER, JJ., concur.

SIMMS, J., concurs in part and dissents in part.

HODGES, ALMA WILSON and SUMMERS, JJ., dissent.

SIMMS, Justice, concurring in part and dissenting in part.

I concur in the majority's vacation of this award but dissent from the remand of the matter for further proceedings.

ALMA WILSON, Justice, dissenting:

The record of this case clearly shows that, *by agreement of the parties,* the Workers' Compensation Court entered orders on October 20, 1983, and on November 22, 1983. The orders awarded workers' compensation benefits to Wilton Ray Gillum [Claimant] for personal injury to the heart (myocardial infarction) arising out of and in the course of Claimant's employment with Bill Hodges Truck Company, Inc. [Respondent]. The parties agreed that as a result of this job related heart injury, Claimant suffered permanent and total disability. This job induced disability, though permanent, nevertheless required continuing medical treatment for the purpose of sustaining Claimant's very life. Both parties, and the Court, acknowledged this fact, as evidenced by the terms of the *Court*

---

25. When there is no competent evidence to show that a changed condition is attributable to, or caused by, the original accidental injury, the award will be vacated. *Deep Rock Oil Corp. v. Anthony,* 161 Okl. 128, 17 P.2d 400 [1932] (syllabus ¶ 1).

26. For this court's authority to remand a proceeding to the trial tribunal upon finding that there was a failure of proof in the claim's consideration, see *Glaspey v. Dickerson,* Okl., 350

P.2d 939, 943 [1960]; see also in this connection *Seymour v. Swart,* Okl., 695 P.2d 509, 512–513 [1985].

27. When this court vacates an order or award and remands the compensation claim for rehearing, the proceedings stand in the trial tribunal as though the vacated decision had never been made. *Adams v. City of Anadarko,* 202 Okl. 72, 210 P.2d 151, 152 [1949].

*sanctioned agreed order*, which provided as follows:

> "THAT respondent shall pay all reasonable and necessary medical expenses incurred by claimant as a result of said injury."

Contrary to the terms of the parties agreed order, Respondent now refuses to pay for reasonable and necessary medical expenses incurred by the Claimant as a result of his on-the-job heart injury. The majority opinion approves Respondent's refusal to honor its agreement on the ground that there was no "causal nexus" shown between the job induced heart injury and the need for a heart transplant, despite the admission that Claimant's physicians advised that a heart transplant is necessary and the only treatment left for Claimant. The admissions, agreements and stipulations of the parties in this case provide the evidentiary "causal nexus" between the job induced heart injury and the necessity for the heart transplantation procedure. Where stipulations have been entered into, the parties will not be allowed to withdraw therefrom, without consent of the other party, except by leave of court upon cause shown. *Smith v. Owens*, 397 P.2d 673 (Okla.1963).

Additionally, the provisions of the parties agreed order partake the nature of a settlement agreement. Ordinarily, courts favor compromising disputes by written agreements fairly and honestly made, and when so made, they are binding on the parties thereto. *Prather v. Butler*, 70 P.2d 106, 180 Okl. 462 (1937). When such agreements are not enforced by the Courts, confidence in any agreement procedure short of trial on all issues is threatened.

I would, thus, save for another day the question whether or not job related injuries to *vital* organs shall, by judicial interpretation, fall under "a separate rubric of compensation", distinguishable from other job related injuries which permanently affect a bodily part, although there is nothing in the Workers' Compensation Act which excludes coverage of vital organs of the body.