2000 OK 76

GEORGE E. FAILING CO. and National
Union Fire Insurance Co.,
Petitioners,

v.

Gene C. WATKINS and The Workers'
Compensation Court,
Respondents.

No. 93,026.

Supreme Court of Oklahoma.

Oct. 24, 2000.

David J.L. Frette, McGivern, Gilliard & Curthoys, Tulsa, OK, for petitioners.

Walt Brune, Fred L. Boettcher, Boettcher Law Offices, Inc., Ponca City, OK, for respondents.[1]

OPALA, J.

¶ 1 The dispositive issue tendered on certiorari is whether the trial tribunal *erred* by failing to dichotomize the claimant's medical and hospital bill, pressed for employer's payment on Form 19, and to apply to each separated section that version of the authorized schedule of fees [2] [tariff] [3] which was in effect when the services to be compensated were rendered.[4]  For the reasons to be stat-

---

1.  Identified herein are only those counsel for the parties *whose names appear on the certiorari briefs.*

2.  The terms of 85 O.S.*Supp.1995* § 14(E) (effective November 4, 1994) *authorized* the Administrator of the Workers' Compensation Court *to prescribe* a "tariff" (*see infra* note 3) for all medical procedures.  According to the statutory mandate:

    ... Such charges and duration of treatment shall be limited to the usual, customary and reasonable charges and duration of treatment *as prescribed and limited by a schedule of fees and treatment for all medical providers to be adopted, after notice and public hearing, by the Administrator* .... The fee and treatment schedule shall be reviewed biennially by the Administrator and, after such review, and notice and public hearing, the Administrator shall be empowered to amend or alter said fee and treatment schedule to ensure its adequacy; provided, however, *the fee and treatment schedule shall not be amended or altered until January 1, 1996 .... Before April 1, 1995, the Administrator shall adopt a new fee and treatment schedule to be effective no later than January 1, 1996 ....*The Administrator's review of medical and treatment charges pursuant to this section shall be conducted pursuant to the fee and treatment *schedule in existence*

    *at the time the medical care or treatment was provided ...*
    (emphasis added).
    The changes in the 1997, 1998 and 2000 versions of § 14(E) do not affect the issues in contest here.

3.  The standard all-inclusive definition for "tariff" is [1] "a listing or scale of rates or charges for a business or a public utility ... a charge or fee set as the cost of goods or service ..." (WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2341 (1961)); [2] "A classified list or scale of charges made in any private or public business; as, a hotel tariff, a railroad tariff." (18 The Oxford English Dictionary 643 (2 ed.1989)); [3] "A schedule listing the rates charged for services provided by a public utility ... a business (esp. one that must by law file its rates with a public agency)" (BLACK'S LAW DICTIONARY 1468 (7th ed.1999)); [4] "a table of fixed charges" (THE OXFORD AMERICAN DICTIONARY AND LANGUAGE GUIDE 1032 (1999)).

4.  The 1989 tariff was completely revised in 1991. The 1991 version was to remain in effect until 1995, the year during which the statute required the Workers' Compensation Court's Administrator to adopt another complete revision of the tariff.  See pertinent language in the 1993 and 1994 versions of § 14(E), *infra* note 31 and *supra* note 2.

ed we answer the question in the affirmative. Because we hold that the trial tribunal erred (a) *by not applying both versions of the legislatively authorized tariff* and (b) *in its view of the governing statute's effect*, we vacate the trial tribunal's order and remand the claim for further proceedings.

## I

## THE ANATOMY OF LITIGATION

### Antecedent Litigation

¶ 2 Gene C. Watkins [Watkins or claimant], an employee for George E. Failing, Co. [Failing or employer], sustained an injury to his lungs in April 1989. The trial tribunal initially granted him temporary total disability [TTD] compensation and later permanent partial disability [PPD] benefits.[5] By the terms of a 1991 order Watkins received both *compensation* and an *award* for incurred medical bills.[6] He was later hospitalized two times, the last of which took place when he entered, in an emergency state, St. Mary's Mercy Hospital on 29 December 1995. There he remained until 12 February 1996.[7]

¶ 3 Watkins moved to reopen based on a changed condition for the worse. After various unsuccessful attempts to reach an agreement on the amount claimed to be his due, Watkins and National Union Fire Insurance Company [8] [National Union Fire or insurance carrier] entered into a settlement (for benefits and compensation) by joint petition dated 5 June 1997. That petition *left unresolved the dispute now before us*—one between the hospital and the employer—over the amount due for claimant's last stay.

### History of Present Litigation

¶ 4 The employer disputed the hospital's claim on various grounds,[9] which included miscalculation of the amount actually owed. The hospital brought a Form 19 proceeding, which was heard in March 1999.[10] The judge

---

5. *Temporary total disability* is defined as the "healing period," or the time in which the employee is totally incapacitated for work by an on-the-job injury. *Bodine v. L.A. King Corp.*, 1994 OK 22, ¶ 9, 869 P.2d 320, 322. *Permanent partial disability* [PPD] refers to a *decrease* in wage earning capacity. *Roberts v. Matrix Services, Inc.*, 1993 OK 148, ¶ 9, 863 P.2d 1242, 1243.

6. When the trial judge issued her 18 September 1991 order for 20% PPD to Watkins' lungs, she also found noncompensable 25% permanent impairment (over and above the 20% PPD) from cigarette smoking. At this stage, the insurance company disputed the amount it should be charged, because the medical statements did not separately rate the impairments which were due to an on-the-job injury by setting them apart from those which were due to Watkins' cigarette smoking. In their joint petition the parties agreed on the amount of medical expenses that may be compensated. That amount excludes those expenses which may be deemed attributable to off-the-job cigarette smoking.

7. The record is conflicting on the exact length of Watkins' hospital stay. The trial judge's 21 April 1999 order awarding payment of medical benefits states in one paragraph that claimant's confinement at St. Mary's ended on *February 12*, but in another paragraph the date shown for that event is *February 21*. Another document entitled "Discharge Summary" indicates that the date of discharge was 18 January 1996. We note that at the 16 March 1999 hearing, Watkins' counsel stated that the hospital stay was from 29 December 1995 through 19 January 1996.

8. We assume the correct name of the insurance carrier to be National Union Fire Insurance Co.; it is so designated by its counsel of record.

9. According to the employer's argument advanced during the 16 March 1999 proceeding (1) it had no knowledge of claimant ever being in the hospital, (2) the hospital stay was unauthorized, and (3) the treatment was neither reasonable nor necessary because the claimant failed to comply with the medical advice given him *before* the hospital stay at issue. The claimant interposed below *a waiver* to counter the employer's contention that a split tariff is to be applied to the Form 19 claim under consideration. *The order under review leaves unresolved the claimant-pressed waiver issue.*

10. This proceeding, commonly called by lawyers a "Form 19 hearing," is governed **by Rules 13(B), 19(A), 24(E),** Rules of the Workers' Compensation Court, 85 O.S.Supp.1998, Ch. 4, App. (effective November 1, 1997).
The terms of **Rule 13(B)** are:
A proceeding under Court Rule 24, to address payment of disputed health service expenses (physician's fees, hospital costs, etc.) shall be commenced by filing a Form 18 or 19. A Form 9 shall be filed to request a hearing on a Form 19 dispute.
The terms of **Rule 19(A)** state in part:
Any party may request a trial on any issue by filing a Motion to Set for Trial (Form 9)....

took judicial notice of and elected to follow—as *governing the entire* claim—the 1991 tariff (for hospital and medical fees) that was in effect when Watkins *entered* the hospital.[11] That tariff, which *exempts* from its *reduced-fee effect* all hospital stays resulting from injuries that require an extended period of intensive care, *authorizes* for the described category imposition of the "usual and customary charge[s]." [12] The trial judge accordingly ordered the insurance carrier to pay *the full amount of Watkins' hospital bill* in question. The Court of Civil Appeals [COCA] sustained the trial judge's order. On certiorari granted upon the employer's and insurance carrier's [hereafter called employer] petition, we vacate COCA's opinion and the trial tribunal's order for the reasons to be explained in Parts II and III, and now remand the Form 19 claim for further proceedings.

## II

## THE EMPLOYER'S THEORY OF ITS LIABILITY

¶ 5 The employer concedes that the trial judge correctly applied the 1991 version of the authorized tariff to the expenses incurred

The terms of **Rule 24(E)** state in part:
1. A medical provider may institute proceedings to recover charges rendered for health care services, medicines or supplies which have been provided to a claimant, by the filing of a Form 19, Part 1. Request for Payment of Charges or Medical or Rehabilitative Services if the provider has not received payment within sixty (60) days from the date the charges were submitted to the uninsured or own-risk employer or insurance carrier.
2. A medical provider may request a trial for a determination of the issues raised on the Form 19 by filing a Form 9. The medical provider shall mail a copy of the Form 9, together with a copy of the Form 19 and itemized bill(s), to the uninsured or own risk employer or insurance carrier in the case.... While the changes in Rules 13 and 24, which became effective 15 April 2000, do not affect the issues tendered here, they may govern post-remand proceedings *which will be commenced while these rules stand in force.* See also footnotes 9 and 33 and in which we caution about the range of issues that may be available for resolution in post-remand proceedings.

between 29 December 1995 and *31 December 1995*, but argues that there was *error in applying the same tariff to the expenses incurred after 1 January 1996.* This is so, it urges, because the then-governing statute (85 O.S.Supp.1995 § 14(E)) [13] mandated by clear and precise language that the tariff next to be prescribed, *which was to replace* that earlier in force, take effect 1 January 1996 and apply to all *after*-incurred expenses.

¶ 6 *COCA rejected this argument,* focusing instead *solely* on the date of Watkins' *change of condition for the worse* as a basis for sustaining the trial tribunal's order. The appellate court reasoned the law in effect at the time the changed condition made itself manifest must govern the reopening claim and hence the *entirety of all treatment covered by this Form 19.* For this proposition the opinion of the intermediate appellate court relies on *Wolfenbarger v. Safeway Stores, Inc.*[14] That COCA-invoked opinion is distinguishable. It is inapposite to the situation here. *Wolfenbarger* deals with the *timeliness of a filed motion to reopen* a claim and addresses itself to *the statute of limitations that is to be applied.*[15] A different issue is tendered by this case.

11. The tariff adopted in 1991 remained in effect through December 1995.

12. *See* the trial judge's 21 April 1999 order awarding payment of medical benefits, which quotes pertinent language from the 1991 tariff:

"Hospital stays resulting from severe head injuries, major burns, severe neurological injuries resulting in paraplegia or quadriplegia *or any injury requiring an **extended** period of intensive care are hereby exempt and should be paid based upon the hospital's **usual and customary charge.**"
(emphasis supplied).

13. For the pertinent text of 85 O.S.Supp.1995 § 14(E) *see supra* note 2.

14. *Wolfenbarger v. Safeway Stores, Inc.*, 1990 OK CIV APP 65, 798 P.2d 1093.

15. According to *Wolfenbarger, supra* note 14 at ¶ 6, at 1094, the applicable statute of limitations begins to run from the date of the change of condition for the worse, not the date of the initial injury.

### III

### BASED ON THE PLAIN AND ORDINARY MEANING OF THE TEXT OF 85 O.S.SUPP.1995 § 14(E),[16] THE STATUTE IN CONTEST ABSOLUTELY MANDATES THAT THE *REVISED TARIFF*—ORIGINALLY PREPARED IN 1991—IS TO BE IN FORCE FROM 1 JANUARY 1996 AND APPLY TO AFTER-INCURRED EXPENSES

¶ 7 When called upon to determine whether a statute applies to a given scenario, this court must focus on legislative intent.[17] It is presumed that the law-making body has expressed its intent in the language of a statute and that it intended what it there expressed.[18] An enactment should be viewed as aimed to attain that purpose and end.[19] In the process of giving meaning to any statute, the starting point is the plain and ordinary significance of the language employed in the text.[20] Only where the legislative intent cannot be ascertained from the language of the enactment's text—as in instances of ambiguity or conflict with other enactments—are rules of statutory construction to be utilized.[21] When employed, these rules have as their primary goal the ascertainment of legislative intent,[22] which is to be gleaned from the text in light of its general purpose and object.[23]

¶ 8 *There is no room here for statutory construction.* This is so because the legislative intent can easily be ascertained from the plain language of 85 O.S.Supp. *1995* § 14(E).[24] Its 1994 *version, which governs here,* directs the Administrator in unequivocal terms to review *biennially* the then-*authorized tariff* in force to ensure its continued adequacy. That version expressly prescribes that the tariff then in use "shall not be amended or altered *until* January 1, 1996."[25] The text provides that "*[b]efore April 1, 1995,* the Administrator *shall adopt* a new fee and treatment schedule [tariff] to be effective **no later than** January 1, 1996."[26] According to the unmistakable tenor of the expressed statutory command, the product of the Administrator's "review of medical and treatment charges" will, when in force, become the tariff "in existence at the time the medical care or treatment was provided."[27] The 1994 enactment's provisions afford a *long notice to the public* which is to intervene between the new tariff's *prescription* (no later than 1 April 1995) and the date when it is to become effective on 1 January 1996.

16. For the pertinent terms of 85 O.S.Supp.1995 § 14(E), see *supra* note 2.

17. *Cooper v. State ex rel. Dep't. of Public Safety*, 1996 OK 49, ¶ 10, 917 P.2d 466, 468.

18. *TXO Production Corp. v. Okl. Corp. Comm'n*, 1992 OK 39, ¶ 7, 829 P.2d 964, 969; *Fuller v. Odom*, 1987 OK 64, ¶ 5, 741 P.2d 449, 453.

19. *TXO Production Corp., supra* note 18, at ¶ 7, at 969.

20. Statutory words are to be accorded their ordinary sense except when a contrary intention plainly appears. *Hess v. Excise Board of McCurtain County*, 1985 OK 28, ¶ 6, 698 P.2d 930, 932.

21. *Cooper, supra,* note 17, at ¶ 10, at 468; *Cox v. Dawson*, 1996 OK 11, ¶ 6, 911 P.2d 272, 276 ("Under our case law, we hesitate to construe any statute that appears clear and unambiguous."); *Fuller, supra* note 18, at ¶ 4, at 452.

22. The primary objective in statutory construction is to ascertain the legislative intent. *Upton v. State of Oklahoma ex rel. Dept. of Corrections*, 2000 OK 46, ¶ 6, 9 P.3D 84, 86–87; *TXO Production Corp., supra* note 18, at ¶ 7, at 968–69; *Ledbetter v. Okla. Alcoholic Bev. Laws Enforcement*, 1988 OK 117, ¶ 7, 764 P.2d 172, 179; *Humphrey v. Denney*, 1988 OK 69, ¶ 8, 757 P.2d 833, 835; *Hess v. Excise Board of McCurtain County*, 1985 OK 28, ¶ 6, 698 P.2d 930, 932; *Riffe Petroleum Co. v. Great Nat. Corp., Inc.*, 1980 OK 112, ¶ 7, 614 P.2d 576, 579; *Lekan v. P & L Fire Protection Co.*, 1980 OK 56, ¶ 6, 609 P.2d 1289, 1292; *Midwest City v. Harris*, 1977 OK 7, ¶ 6, 561 P.2d 1357, 1358.

23. *Upton, supra* note 22, at ¶ 6, at 86; *TXO Production Corp., supra* note 18 at ¶ 7, at 969.

24. When legislative intent is clearly expressed in the statute, there is no room for further judicial inquiry. *Special Indemnity Fund v. Stockton*, 1982 OK 119, ¶ 20, 653 P.2d 194, 200; *Hughes Drilling Co. v. Morgan*, 1982 OK 77, ¶ 9, 648 P.2d 32, 35; *B.F. Goodrich v. Hilton*, 1981 OK 114, ¶ 5, 634 P.2d 1308, 1310; *Johnson v. Ward*, 1975 OK 129, ¶ 11, 541 P.2d 182, 185.

25. 85 O.S.Supp.1995 § 14(E), *supra* note 2 (emphasis added).

26. *Id.* (emphasis added).

27. *Id.* (emphasis added).

This lengthy transition is clearly indicative of the legislature's intent that the *revised version of the tariff,* once in force, replace *in its entirety* the earlier one not later than on the date it becomes clothed with statutory effect.

■ ¶ 9 Our view also finds support in § 14(E)'s legislative history.[28] Its 1986 version [29] merely provided for the *biennial review* and *adoption* of a "fee and treatment" tariff. Subdivision (E) remained substantially *unaltered* by its 1990 and 1992 amendments. Both *required* the Administrator to review the tariff biennially and make necessary changes in the current tariff to ensure their adequacy.[30] It is the 1993 version that set in motion a three-year schedule for the effectuation of the initial *mandatory revision* of the then-current tariff. Its text *explicitly commanded that no tariff be changed "until 1995."*[31] In contrast, the 1994 amendment to § 14(E) *set* 1 January 1996 as the *effective date* for the new tariff's *unconditional application* to expenses incurred on and after that point in time.

¶ 10 Basing our conclusion, as we must, on the plain and unambiguous language found in 85 O.S.Supp.1995 § 14(E), we hold today that the revised tariff for medical and hospital services in contest here was intended *entirely to supersede,* effective 1 January 1996, the

tariff which remained in force through the end of 1995.[32]

## IV

## SUMMARY

¶ 11 The trial tribunal erred in *failing to dichotomize* Watkins' medical expenses (pressed in the instant Form 19 claim) by separating those he incurred *before* 1 January 1996 from those that were incurred *after* 31 December 1995. The tariff in force during each period must be applied to the exclusion of any other tariff. Expenses incurred *after* 31 December 1995 are to be compensated *solely* by the tariff that took effect on 1 January 1996. The dichotomy we mandate in today's opinion is textually demonstrable by the 1994 text of § 14(E). That statute must be applied to the Form 19 claim under review.

■ ¶ 12 On certiorari previously granted upon the employer's petition, the Court of Civil Appeals' opinion and the trial tribunal's order are vacated and the Form 19 claim is remanded for further proceedings to be consistent with today's pronouncement.[33]

¶ 13 **ALL JUSTICES CONCUR.**

**28.** Any doubt about the meaning of a statute may be resolved by reference to its documented history. *Lekan v. P & L Fire Protection Co.,* 1980 OK 56, ¶ 6, 609 P.2d 1289, 1292; *Sheridan Oil Co. v. Superior Court of Creek County,* 1938 OK 298, 82 P.2d 832, 834.

**29.** The terms of 85 O.S.*Supp.1986* § 14(E) provided in pertinent part:
... The fee and treatment schedule *shall be reviewed biennially* by the Administrator and, after such review, and notice and public hearing, the Administrator shall be empowered to amend or alter said fee and treatment schedule to ensure its adequacy....

**30.** The **1992** amendment of § 14(E) added the following sentence:
The Administrator's review of medical and treatment charges pursuant to this section shall be conducted pursuant to the fee and treatment schedule in existence at the time the medical care or treatment was provided....

**31.** The terms of 85 O.S.*Supp.1993* § 14(E) provided in pertinent part:

... The fee and treatment schedule shall be reviewed *biennially* by the Administrator and, after such review, and notice and public hearing, the Administrator shall be empowered to amend or alter said fee and treatment schedule to ensure its adequacy; ***provided, however, the fee and treatment schedule shall not be amended or altered until 1995....***
(emphasis added).

**32.** In short, for application to services rendered *on and after* 1 January 1996 the tariff in force when Watkins entered the hospital became *functus officio. Functus officio* is a term applied to denote something that once has had life and power, but has become of no effect whatsoever. *Hendrick v. Walters,* 1993 OK 162, ¶ 3, 865 P.2d 1232, 1235 n. 3. As applied here, *functus officio* simply means that for services rendered on and after 1 January 1996 the tariff in force in 1995 stands entirely stripped of its legal effect.

**33.** For the issues which were urged below but left unresolved by the trial tribunal, see *supra* note 9. When a compensation order is vacated

and the claim remanded, the claim stands before the trial tribunal as though it had never been adjudicated before, *except* of course for those legal questions that came to be settled by the appellate pronouncement. *Bill Hodges Truck Co. v. Gillum*, 1989 OK 86, ¶ 19, 774 P.2d 1063, 1069; *Muncrief v. Memorial Hosp. of Southern Oklahoma*, 1988 OK 74, ¶ 12, 767 P.2d 400, 403; *Adams v. City of Anadarko*, 1949 OK 52, ¶ 4, 210 P.2d 151, 152. *See in this connection Seymour v. Swart*, 1985 OK 9, ¶ 8, 695 P.2d 509, 513.